SAMUEL CROSSLEY *et al.* v. JOHN S. STANLEY, Administrator, Appellant.

**Release of Surety:**  FRAUD OF PRINCIPAL: *Knowledge of lender.*
Where a surety is induced to sign a note by representations of the principal that the proceeds are to be used to pay for grain purchased by him, which representations were known to the lender, the application of a part of the proceeds to an indebtedness of another character, due the lender, will release the surety from liability.

*Appeal from Benton District Court.*—HON. G. W. BURN-HAM, Judge.

FRIDAY, OCTOBER 5, 1900.

ACTION to cancel a note executed to John B. Reeve, in so far as it purports to bind plaintiffs as sureties. Decree as prayed, and defendant appeals.—*Affirmed.*

*Gilchrist, Whipple & Montgomery* for appellant.

*Nichols & Kirkland* for appellees.

LADD, J.—The deceased, John B. Reeve, conducted a private bank at Garrison. F. F. Hughes was a dealer in grain at the same place. About February 16, 1897, the latter had overdrawn his account at the bank $1,159.58, and owed Reeve besides $2,000.00 on book accounts, and $1,000.00 secured by a mortgage on his homestead. Hughes had also received wheat from farmers, for which he had agreed to pay the market price on demand, then valued at $2,000.00. He had no money to pay for the stored wheat, and apprehended the necessity of closing his business in event the farmers called on him for its value. In this situation he arranged to execute to Reeve a note for $2,500.00, with eight sureties, one of whom was Reeve, which was done. The proceeds of this note were credited to Hughes on the books of the bank in payment of the overdraft, and the balance, save $108.32, used in his business. There is no question but that Hughes concealed the existence of the overdraft from the plaintiffs, and induced them to sign as sureties upon the representation that the money was to be used in payment for the stored wheat, and what was left— from $500.00 to $800.00—to carry on his business. True, as contended by appellant, the money was borrowed to enable him to continue in business, but the manner of such continuance was to be as stated; and Reeve knew of the purpose for which the money

was intended, and of the representations through which the signatures of the sureties were procured. To these matters Hughes testified without objection being made to his competency. *Burdick v. Raymond,* 107 Iowa, 228.

I.   That a surety may stipulate for the particular use of a note as a condition to signing it is settled by the decisions. This condition may be material or immaterial, and no person who takes it with knowledge can acquire title as against him in violation of the terms imposed. The surety may insist on the strict terms of his agreement, and, if material alteration is made without his consent, notwithstanding it inure to his benefit, he will be discharged. *Stillman v. Wickham,* 106 Iowa, 597. As said by Earle, J., in *Benjamin v. Rogers,* 126 N. Y. App. 60 (26 N. E. Rep. 970): "A surety has the right always to impose any limit he chooses to his liability. He may always fix the precise terms upon which he is willing to become a surety, no matter whether the terms seem to be material or immaterial. By imposing them, he makes them material, and one who takes his contract with knowledge of the limitations cannot enforce it against him. The general rule as to a surety is that he is not to be bound beyond the plain terms of his contract, and it is not sufficient to make him liable that he may sustain no injury by a change in the contract." As directly in point, see *Bank v. Dunn,* 151 Pa. Sup 228 (25 Atl. Rep. 80); *Johnson v. May,* 76 Ind. 293; *Bank v. Ewing,* 131 N. Y. App. 506 (30 N. E. Rep. 501); *Bank v. Ayres,* 16 Ohio, 283. In *Gage v. Sharp,* 24 Iowa, 15, and *Laub v. Rudd,* 37 Iowa, 619, the holders were held to have taken without notice. But, aside from this, it is manifest that the sureties had an interest in the use of the money as proposed. The stored wheat, if paid for, would have become an asset out of which the note might in the future be paid, while nothing could be anticipated from the satisfaction of the overdraft. Again, had the money been devoted to the purposes intended, Hughes would not have been left empty-handed at the time of Reeve's

death, in June of that year, but would have had funds with which to carry on his business, as was intended, and the opportunity to acquire means from which to satisfy the note. These sureties had the undoubted right to stipulate for the application of the proceeds of the note to the purposes intended. The representations of Hughes, with their response by signing in reliance thereon, amounted to such an agreement. As Reeve had full knowledge of all this, he took the note thus limited, and by diverting a part of the proceeds to another purpose, *i. e.* the payment of the overdraft, without their consent, released them from liability.—AFFIRMED.

GRANGER, C. J., not sitting.