[Ashtabula (7th) Circuit Court, September Term, 1911.]
Norris, Pollock and Metcalfe, JJ.

*ORWELL BANKING CO. v. HATTIE L. PELTON ET AL.

**Money Furnished by Wife to Pay Husband's Indebtedness Applied to That on Which She is Surety.**

> Where the wife furnishes the husband with money to make a payment on his indebtedness to a creditor to whom he owes two debts, both being due, on one of which his wife is surety, equity will require the creditor to apply the payment to the debt on which the wife is surety, if he knew that the payment was made with money of the wife, even if the husband at the time of the payment neglected to direct the application.

[Syllabus by the court.]

APPEAL from common pleas court.

*McGiffert & Ullman*, for plaintiff:

Cited and commented upon by the following authorities: *Miller* v. *Sullivan*, 39 Ohio St. 79; *Gordan* v. *Kearney*, 17 Ohio 572; *Smith* v. *Clews*, 105 N. Y. 283 [11 N. E. Rep. 632; 59 Am. Rep. 502]; *Burnham* v. *Holt*, 14 N. H. 367; *Condon* v. *Insurance Co.*, 45 Bull. 229; *Potter* v. *Potter*, 27 Ohio St. 84; *Shulters* v. *Toledo*, no op., 57 Ohio St. 667.

*Warren Thomas and H. E. Starkey*, for defendants.

**POLLOCK, J.**

The plaintiff is seeking to foreclose two mortgages given by the defendants, Hattie L. Pelton and her husband, W. H. Pelton, on the real estate described in the petition. The second mortgage was given to secure the payment of a promissory note executed by W. H. Pelton and his wife in favor of plaintiff, for $2,719. The defendant, Hattie L. Pelton, in her answer, claims a credit of $1,950.10 on this note. This credit is denied by the reply, and the issue raised between the answer and the reply is the only question submitted to this court in the trial of the case.

The facts in this case show that the plaintiff for many years past had been conducting a general banking business at Orwell in this county; that W. H. Pelton, the husband of Hattie

*Affirmed, no op., **Orwell Banking Co. v. Pelton**, 88 Ohio St. 607.

L. Pelton, for some years prior to the giving of this note had an open deposit account with plaintiff, and that from time to time prior to January 25, 1906, he had made overdrafts on the plaintiff.

These overdrafts were paid by giving to plaintiff from time to time as they occurred, the joint note of himself and wife. At the date above mentioned these notes amounted to over $2,000, and in November of that year were all past due.

After the giving of these notes and prior to November 19, 1906, W. H. Pelton had incurred a further overdraft with plaintiff of over $2,000. About that date the plaintiff was insisting upon W. H. Pelton reducing his indebtedness to it. Either the bank or W. H. Pelton suggested that a mortgage be made on the premises described in the petition. The title to these premises was in Hattie L. Pelton; they were her separate properties, and this fact was at that time known to plaintiff. On November 19, 1906, a loan of $2,000 was made from one Kent, Hattie L. Pelton securing this loan by a mortgage on these lands executed by herself and her husband. Kent gave Hattie L. Pelton his check, payable to herself and husband, for $1,950.10, being the proceeds of said loan after deducting the expense of securing the same.

This check was then endorsed by Hattie L. Pelton and given to her husband to be by him applied, as she intended, on his indebtedness to plaintiff, upon which she was surety. When W. H. Pelton went to the bank he made out a deposit slip of this check, and another small check of his own, handed the checks and deposit slip over the counter to the cashier of plaintiff, who gave W. H. Pelton credit on his personal account for the proceeds of these checks, and in this way applied the check of Mrs. Pelton to the payment of the overdraft of W. H. Pelton, and not on his notes upon which Hattie L. Pelton was surety. At the time plaintiff applied this check to the payment of the overdraft, it knew that the check represented the proceeds of a loan that Hattie L. Pelton had made by encumbering her property which she held separate and apart from her husband, for the purpose of paying on the indebtedness of her husband to the bank.

On September 12, 1908, Hattie L. Pelton and her husband were called by plaintiff to its bank, and her indebtedness on the notes which she had signed for her husband was called to her attention, resulting in her taking up the notes upon which she was surety and giving her note for $2,719.00, secured by mortgage, which is the second mortgage set up by plaintiff in this action. At this time no mention was made of the application which the bank had made of the proceeds of the Kent check, and Hattie L. Pelton did not know of its application until just prior to the bringing of this action. She had not kept any account of the number or amount of the notes that she had signed for her husband, and was not aware of the amount of her indebtedness to plaintiff. Prior to this visit to the bank Hattie L. Pelton had no business relations with plaintiff, except signing the notes as surety for her husband. Until shortly prior to the bringing of this action, Hattie L. Pelton had no knowledge of any indebtedness of her husband to plaintiff except the notes upon which she was surety.

Mr. Chamberlain, the cashier of plaintiff, and W. H. Pelton do not agree in their testimony as to the conversation that occurred at the time he was asked to reduce his indebtedness to plaintiff or pay the overdraft. Mr. Pelton claims that he told Mr. Chamberlain that Mrs. Pelton was willing to give a mortgage on her property to raise money to secure the indebtedness to plaintiff on which she was surety, and that when he made the deposit of the Kent check, he told the cashier that that was the money of Mrs. Pelton. Mr. Chamberlain denies that these statements were made to him, but is not able to state the conversation further than to say that he asked Pelton to pay his overdraft.

We have then for our consideration the question whether the plaintiff had a right to apply the proceeds of the Kent check to the payment of the indebtedness of W. H. Pelton on the overdraft, or was plaintiff required to apply it to the payment of his indebtedness upon which Mrs. Pelton was surety?

The rule, without doubt, is, that where a debtor owes two or more debts to a creditor, and they are all due, the debtor may, at the time he makes the payment, direct its application, but if he neglects to do so, the creditor has a right to apply the pay-

ment to either debt, at his election. But there are some exceptions to this general rule, and one of them is where the money to make the payment comes from a third party, who is liable upon one of the debts and not upon the others, and the creditor knows at the time the payment is made the source from which it comes, he must apply the payment upon the debt for which the third party is liable. *Crane Bros. Mfg. Co.* v. *Keck,* 35 Neb. 683 [53 N. W. Rep. 606] ; *Lee* v. *Brewing Co.* 75 Neb. 212 [106 N. W. Rep. 220] ; *Crossley* v. *Stanley,* 112 Iowa 24 [83 N. W. Rep. 806; 84 Am. St. Rep. 321] ; *Thacker* v. *Lumber Co.* 131 S. W. Rep. 271 (Ky.) ; 30 Cyc. 1237, in.

Abbott, C. J., in *Thompson* v. *Brown,* Moody & M., p. 40, says:

"The general rule certainly is, that when money is paid generally, without any appropriation, it ought to be applied to the first item in the account; but the rule is subject to this qualification, that when they are distinct demands, one against persons in partnership and another against one only of the partners, if the money paid be the money of the partners, the creditor is not at liberty to apply it to the payment of the debts of the individual, that would be allowing the creditor to pay the debts of one person with the money of another."

From the facts in this case we have this condition existing between the plaintiff and Mrs. Pelton at the time plaintiff applied the proceeds of the Kent check to the payment of the overdraft of her husband. W. H. Pelton was indebted to the plaintiff for more than $2,000 on notes upon which Mrs. Pelton was surety, and which were then past due; he was further indebted to plaintiff for more than $2,000 upon overdrafts upon which plaintiff had no security; Mrs. Pelton had no knowledge of this latter indebtness of her husband; after requesting W. H. Pelton to pay his overdrafts the bank received the check for $1,950.10 from him, knowing that it was the property of Mrs. Pelton, the surety on the notes, and applied the proceeds of the check to the payment of the overdraft, without receiving any directions as to the application of the check from either Mr. or Mrs. Pelton.

The plaintiff knew at the time the check was handed to it by W. H. Pelton that the proceeds of the check were the funds

of his wife, which she had obtained by mortgaging her separate property, and it was required by good conscience and equity to give credit on the note of her husband, upon which she was obligated as surety. To do otherwise would be taking the property of one person to pay the debts of another, without the consent of the owner of the property and this cannot be done.

The plaintiff makes the further claim that even if this check was the property of Mrs. Pelton, that she had endorsed and given it to her husband, making him her agent, and if he made an unauthorized use of the check, the bank was not a party to the wrongful acts of the husband, and when he made out an ordinary deposit slip in his own name, and handed it to the officers of the bank without any instructions, that plaintiff had a right to treat the check as an ordinary deposit and place it to his credit, which the bank did, and in that way it reduced his overdraft.

The bank at this time knew that this check was not intended as an ordinary deposit, but was intended to reduce the indebtedness of W. H. Pelton to it. The husband could not appropriate the proceeds of his wife's check to his own use, and if he did, and the bank received it, knowing that the check was the property of the wife, the bank could not retain the proceeds of the check against the wishes of the wife.

"The general rule is that the principal may recover his property or its value from a third person, where it has been wrongfully transferred by his agent, contrary to instructions or in excess of authority. Unauthorized payment of money made by an agent may as a rule he recovered by the principal as money had and received, and where an agent without apparent authority uses property of his principal to liquidate his own indebtedness to a third person, or otherwise disposes of it, such property or its value may ordinarily be recovered by the principal by an action of replevin or other appropriate action." 31 Cyc. 1605.

To the same effect is Mechem, Agency Secs 778, 780 and 781.

In the case of *Van Alen* v. *Bank,* 52 N. Y. 1, it was held that:

"An agent instructed to sell his principal's property and

use the proceeds, if necessary, to protect notes on which the principal was endorser, and meanwhile deposit the proceeds in bank to his own credit, sold the property, but substituted other money for the proceeds and deposited such substituted money to his own credit. Held, that the bank was liable to the principal on the agent's check for the amount so deposited.''

Again, 2 Clark and Skyles, Law of Agency, page 1184:

''But while in such case the principal, in order to recover must show that the creditor knew that the agent was acting in violation of his authority, in so using the money to pay his own debt, knowledge that the money was held by him as agent is sufficient to establish its prima facie case, as the legal presumption is that an agent has no authority to dispose of the property of the principal in payment of his own debt; and one therefore who receives such payment with knowledge that the money was held by his debtor as agent, does so at his peril, and to defeat a recovery must show authority in the agent to so dispose of the money.''

At the time Mrs. Pelton gave the check to her husband to apply on his indebtedness, she knew of no indebtedness of her husband to the bank, except that upon which she was bound as surety; she procured this money to apply on this indebtedness, and if her husband caused the proceeds of this check to be placed to his credit, it was an unauthorized use of the check for his own benefit, and the bank at that time having knowledge that the check was not his own, but the property of his wife, it cannot now retain her property wrongfully used, but she has a right to have the proceeds of her check applied to reducing the indebtedness of her husband upon which she was surety.

Under either theory of this case we think that Mrs. Pelton should have her credit of $1,950.10 made on her note, and made as of the date at which that deposit was made in the bank. There will be a decree of foreclosure of the mortgages for the amount remaining due. If plaintiff desires to file a motion for new trial it may do so, and if filed, the motion will be overruled and proper exceptions noted thereto.

Norris and Metcalfe, JJ., concur.