CRANE BROS. MANUFACTURING CO., APPELLANT, V. SAMANTHA KECK ET AL., APPELLEES.

[FILED NOVEMBER 16, 1892.]

1. **Bill of Exceptions:** SERVICE ON ONE OF APPELLEES. Where there are two or more principal defendants against whom the plaintiff is seeking to enforce a claim, there being no particular controversy between them, service of the bill of exceptions upon one of such defendants or his attorney within the time fixed by statute will be sufficient.

2. ————: MOTION TO QUASH: TIME OF FILING: WAIVER. Where a defendant fails to file a motion to quash until after briefs upon the merits have been made and served the court will consider the objection waived.

3. **Application of Payments:** RIGHTS OF THIRD PARTIES. While as between the debtor owing several debts and his creditor where the former, at the time of payment of a sum of money, fails to designate the debt on which it is to be applied, the latter may do so, yet there is an exception to this rule, as, where the money was received by the debtor from a third party whose property would be liable for the debt in case the money was not applied upon the third party's liability.

4. **Construction of Instruments:** ORDER. The instrument set out in the opinion is an order which, as the drawee refused to accept the same, the plaintiff was not bound to furnish the material mentioned therein.

APPEAL from the district court for Buffalo county. Heard below before HAMER, J.

*Brown & Brown,* and *Jeffrey & Rich,* for appellant.

*Calkins & Pratt,* for appellee Samantha Keck.

*R. A. Moore,* for appellee Joseph Walther.

MAXWELL, CH. J.

This is an action by material-men to foreclose a mechanic's lien upon a hotel in the city of Kearney.

On the trial of the cause the court below found that the whole value of the material furnished by the plaintiff was the sum of $643, and that the defendants had paid thereon the sum of $450, and that the defendant Keck had sustained damages by reason of the delay of the defendants in furnishing the material, in the sum of $193. The court thereupon found for the defendants and dismissed the action. The plaintiff appeals.

A motion is now made on behalf of Walther to quash the bill of exceptions as to him because it was not presented to him within eighty days from the rising of the court. The cause was tried on the 3d day of May, 1890, and judgment entered at that time. A bill of exceptions was thereupon duly prepared and submitted to the attorneys for Samantha Keck. Notice was given the attorney of Walther that the bill was in their hands for examination and amendment. The bill seems to have been retained by such attorneys much beyond the ten days allowed by law. When it was returned, however, it was presented to the attorney for Walther, who refused to examine the same and make any corrections thereon. The bill was thereupon presented to the judge, who signed the same. In this case, while the rights of the defendants are so far separate and distinct that a joint judgment is not sought against them, as against Walther a judgment is asked for the amount of the debt, and it is sought to enforce the same against the property of his co-defendant Keck, yet there is no diversity of interest between them as against the plaintiff and they are so far joint that service of the bill upon the attorneys of either will justify the judge in signing the same. Where there are many defendants, who appear by separate attorneys, it is impossible to serve the same bill upon all within forty, or even eighty days, and in fact is not contemplated by statute. A service upon the principal defendants is all that is required. Ordinarily, this will bring up the case as to all. The service therefore was sufficient.

The bill and transcript were filed in this court on the 3d day of November, 1890, and the motion to quash was not filed until after the briefs upon the merits had been filed. This is too late. The motion must therefore be overruled.

It appears from the record that Walther had purchased a considerable quantity of plumbing material from the plaintiff; that he paid the plaintiff $100, and $150 money paid to him upon this account by his co-defendant Keck. This money was paid without directions as to its application, and the plaintiff sought to apply it to another debt and now claims the right to do so. As between the debtor and creditor, there is no doubt of the rule that where the debtor fails to designate the debt, where there are several debts upon which the payment may be applied, the creditor may apply it. Where, however, the rights of third parties intervene, the rule does not apply. Thus, where A was a creditor of a firm and also of a surviving partner thereof individually, and the latter made a payment out of funds belonging to the firm without designating the debt on which it should be applied, it was held that as the funds belonged to the firm they must be applied to the partnership debt. (*Weisenfeld v. Byrd*, 17 S. Car., 106; *Thompson v. Brown*, 1 Moody & M. [Eng.], 40; 18 Am. & Eng. Ency. of Law, 240.)

This rule was applied in *Coms. v. Springfield*, 36 O. St., 643, where the county treasurer was *ex officio* treasurer of the city and its board of education, and also treasurer of the township of S. and its board of education. He received and mingled the moneys of these various corporations together. On a settlement with the county board he was unable to pay the amounts due the several corporations above named, but there was sufficient to satisfy the amount owing to the county, which the county board directed to be placed to the credit of the county and appropriated to county purposes. The money was appropriated as directed,

but it was held that the county was liable in equity to account to the other corporations for their proportionate share of the fund so appropriated. It is said: "The question then is whether the county of Clark is liable to the city of Springfield and its board of education, and the township of Springfield and its board of education, for *pro rata* shares of the moneys in the treasury, $61,860.26, appropriated, under direction of the commissioners, to the use of the county. That the moneys of these various corporations were mingled, and that the embezzlement was from the mass, cannot be denied; and it must be further admitted that the amount appropriated to the use of the county, under direction of the commissioners, was the exact sum due to the county from Wick, but neither mingling the money, the embezzlement, nor the appropriation by the county had the effect of destroying the interest of the city, township, and school boards in the sum which was in the treasury at the time of the settlement. Equity will make it available to them by fastening a liability on the county. This would clearly be the rule as applied to individuals under such circumstances, and there is no reason for saying the same rule does not apply to public corporations. (*Van Alen v. American National Bank*, 52 N. Y., 1; *Matter of Van Duzer's Estate*, 51 How. Pr., 410; *Farmers, etc., Bank v. King*, 57 Pa. St., 202; *Pennell v. Deffell*, 4 De G., M. & G. [Eng.], 372; *Cook v. Tullis*, 18 Wall., 332; *Bayne v. United States*, 93 U. S., 642; *United States v. State Bank*, 96 Id., 30.)"

The following is the alleged contract:

"KEARNEY, NEB., October 1, 1887.

"Received from Jos. Walther the sum of $650 in cash on account, and the amount of $348.49 in goods returned on account, which are held by him on storage subject to our orders, and also received from him an order on Samantha Keck for $500, which amount, when paid by said Samantha Keck to us, we agree to credit to his account, on

account of goods shipped by us to be used in .the Keck building, and the goods ordered, which we are to ship for completing the plumbing work on said Keck building.

> "CRANE BROS. MANFG. CO.,
> "By MONTGOMERY & JEFFREY,
> "*Their Attorneys.*"

This instrument, while not expressed in a very artistic manner, is clearly shown to be an order, which the drawee refused to accept.

J. L. Keck, who seems to have transacted all the business for Samantha Keck, testifies:

A. He [the agent of plaintiff] said that they had sent some goods, more goods than they had received value for, and that he had come to see Joe and me about it. I told him to see Mr. Frank about it, but that under no circumstances would Joe get any more money; that I was going to Cincinnati and nobody could get any money until I got back. Whatever was due them, I would see that they got their proportion of it. Then I had a conversation with another representative of Crane Bros. Manufacturing Company; that was along about the 5th day of October on my return from Cincinnati.

Q. You may state whether anything was said about how much money they had received at that time; did they state that they had received any?

A. No, sir; I am not clear now that they stated the amount they had received, but he stated that they had delivered more goods than what they were entitled to pay, and that they would not or did not want to deliver any more goods until they were paid some money or had it secured. I was just on the eve of going to the train and I told him to see Mr. Frank, that under no circumstances would anybody be paid more money, because Frank, within the next three or four days, was to start for Europe, and I was to come right back from Cincinnati.

Q. When did you return from Cincinnati?

A. About the 5th of October.

Q. Did you then see or meet a representative of the plaintiff?

A. Yes, sir.

Q. What was the conversation?

A. The representative of the Crane Bros. Manufacturing Company was Mr. Samuel Nevius. He wanted to know if I owed Joe Walther any balance. I told him I did. He wanted to know how much. I said I could not tell; that I hadn't the account with me and I did not exactly know for I did not know how much work was done. There was some material in the house but there was a good deal of it that was not put up. He said that he had an order from Mr. Walther on me for $500. He showed it to me and wanted to know if I would have any objection to accepting it. I said, "yes, I had."

Q. Previous to this conversation had you been informed by Mr. Walther that he had made arrangements for them to ship the goods?

A. Yes, sir.

Q. Go on and state what was said.

A. I said to Mr. Nevius that I declined to accept an order of $500 for material that was yet to be delivered. I would say, that if that material was delivered and that it was put up in the house in accordance with the contract, I would pay that amount of money, because there would be that amount and more due Mr. Walther, but I respectfully decline to accept an order for material not yet furnished. He said that Crane Bros. Manufacturing Company and Walther had had a settlement and there would be no question about everything being all right. I said: There has been a question. Material has been coming for this contract and was to be here long before this; that I had been to Joe to get him to write or telegraph to Crane Bros. Manufacturing Company for these things. * * *

Witness: I said I would just positively decline to pay

for anything in advance; that upon the receipt of the goods and put up in the house according to the contract, I would guarantee that they would get their money, but I would not pay anybody a dollar until the work had been completed. He said that that would be perfectly satisfactory to them. Within a week or ten days from that time he came back and said that Crane Bros. Manufacturing Company had returned the order and required an unqualified acceptance. I said unqualifiedly that I would not do it and I did not.

The testimony clearly shows that Walther was indebted to the plaintiff in a considerable amount; that this account had been running for a considerable time, and that the plaintiff refused to furnish the goods in question unless it had security. Therefore, when Mr. Keck refused to accept the order the proposition fell through. It is very clear that the court erred in its findings and judgment. The judgment is therefore reversed and the cause will be remanded to the district court to render judgment in accordance with this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.