MERCHANTS INSURANCE COMPANY v. WILLIAM S. HERBER and
Others.[1]

June 7, 1897.

Nos. 10,520—(103).

### Principal and Surety—Application of Payments

It is a general rule that a surety cannot direct the application of pay-
ments made by his principal, and that he is bound by any application
made by the principal and the creditor, or either.

### Same.

This rule applies only to cases where the principal makes the pay-
ment from funds which are his own, free from any equity in favor of
the surety to have the money applied in payment of the debt for which
he is liable.

### Same—Equitable Rights of Surety.

Where the specific money paid to the creditor, and applied on a debt
of the principal for which the surety is not bound, is the very money
for the collection and payment of which he is surety, he is not bound
by such application; and he is equitably entitled to have the money
applied to the payment of the debt for which he is liable, unless the
creditor shows a superior equity to have the application, as made, stand.

### Same—Burden of Proof.

Where payments have been applied by the agreement, express or
implied, of the creditor and the principal, the burden is upon the surety
to show that the application is inequitable as to him.

### Same—Sufficiency of Evidence.

Evidence considered, and *held*, that it was not sufficient to support the
verdict herein.

Appeal by plaintiff from an order of the district court for Hennepin
county, Pond, J., denying a new trial. Reversed.

*Wm. Ely Bramhall*, for appellant.

The right of appropriation is confined to the parties themselves.
Gordon v. Hobart, 2 Story, 243; Seymour v. Marvin, 11 Barb. 80;
Allen v. Culver, 3 Denio, 284; Frost v. Mixsell, 38 N. J. Eq. 586; Sey-
mour v. Van Slyck, 8 Wend. 403; Munger, App. Paym., 75-80. Sure-
ties cannot direct it, but are bound by the application made by the

[1] Reported in 71 N. W. 624.

parties. Allen v. Culver, supra; Poulson v. Collier, 18 Mo. App. 583; Blanton v. Rice, 5 Mon. 253; Goetz v. Piel, 26 Mo. App. 634; 1 Story, Eq., (13th Ed.) § 459 g. Citing also, Dwinel v. Sawyer, 53 Me. 24; Jones v. U. S., 7 How. 681; Kerby v. Marlborough, 2 Maule & S. 18; Inhabitants v. Bell, 9 Metc. (Mass.) 499; Harding v. Tifft, 75 N. Y. 461; Pope v. Transparent, 91 Va. 83; State v. Smith, 26 Mo. 226; Dulles v. DeForest, 19 Conn. 190; Zinns v. Mendelson, 89 Wis. 133. The courts, in applying general payments for the benefit of the surety, which were made by the debtor and were not appropriated either expressly or by implication by the creditor, have been very careful in many instances to expressly state, that if the parties had made specific applicatons they would not have felt at liberty to have disregarded them. Seymour v. Van Slyck, supra; Pickering v. Day, 2 Del. Ch. 333. The courts have not uniformly, however, been so careful to protect the sureties even to this extent, but have followed the general rule, making no exceptions for the sureties' benefit, that all general payments made by the debtor will be applied to pay the items of his indebtedness to the creditor in the order of their priority. U. S. v. Kirkpatrick, 9 Wheat. 720; Postmaster v. Furber, 4 Mass. 333; U. S. v. Wardwell, 5 Mason, 82; Williams v. Rawlinson, 10 Moore, 362; Helm v. Com., 79 Ky. 67; Tomlinson v. Simpson, 33 Minn. 443; Hersey v. Bennett, 28 Minn. 86; County v. Willard, 39 Minn. 125; Board v. Citzens, 67 Minn. 236.

*John F. Byers,* for respondent.

Ordinarily it may be true that a creditor has a right to apply payments made by his debtor as he and the debtor may between them elect, but as said by this court in Tomlinson v. Simpson, 33 Minn. 443, "we have found no well-considered case where the law has applied this rule to the prejudice of a surety." Citing U. S. v. Eckford, 1 How. 250; U. S. v. January, 7 Cranch, 572; U. S. v. Morgan, 28 Fed. 48; Postmaster v. Norvell, Gilpin, 106; U. S. v. Linn, 2 McLean, 501; Shain v. Petersen, 99 Cal. 486; British v. Neil, 76 Iowa, 645; Vivian v. Otis, 24 Wis. 518; Grafton v. Reed, 34 W. Va. 172; Metts v. State, 68 Miss. 126; Paw Paw v. Eggleston, 25 Mich. 36; Detroit v. Weber, 29 Mich. 24; Board v. Citizens, 67 Minn. 236; State v. Smith, 26 Mo. 226.

START, C. J. This is an action upon a bond given to the plaintiff

by the defendants Herber, as principal, and Wright and another, as sureties. Verdict for the defendant Wright, who alone answered, and the plaintiff appealed from an order denying its motion for a new trial. At the close of the evidence the plaintiff requested the court to instruct the jury to return a verdict for the plaintiff for the amount claimed in the complaint. The request was refused, and plaintiff excepted. This ruling is assigned as error, and its correctness is practically the only question we find it necessary to discuss or determine on this appeal.

On April 21, 1893, the defendant Herber was appointed sole agent of the plaintiff for the city of Minneapolis. The appointment in fact took effect on May 1st following, at which time he took sole charge of the agency, with authority to write insurance and collect all premiums for the plaintiff. The bond in question was executed at the date of his appointment, and was conditioned for the faithful discharge of his duties as such agent, and particularly that he would comply with the instructions of the plaintiff, promptly collect all premiums, and remit the same to the plaintiff within the time required by such instructions. The instructions given to the agent directed that the premiums be collected on delivery of the policies, that is, the plaintiff would allow no credit, and, if any were given, it would be at the agent's own risk; that all accounts for the business of the previous month, with remittance to balance, must be made by the 15th of each month; and, further, that it must be distinctly understood that all money received for premiums was the property of the plaintiff. The agent was, however, allowed to retain 15 per cent. of the premiums for his commissions and certain stipulated charges.

The agency of Herber continued under this appointment to, and was terminated on, November 1, 1894, at which time he was indebted to the plaintiff on account of premiums for policies issued by him for plaintiff in the sum of $891.91, for the recovery of which this action was brought. That Herber is indebted to the plaintiff in this amount, there is no controversy. It is also admitted that he remitted to the plaintiff money from time to time, during the time he was sole agent, which in the aggregate exceeded the amount due to it from Herber on account of policies issued by him during the time covered by the bond in question.

The evidence is undisputed that, for some years next before Herber's appointment as sole agent, he was, with his then partner, Wilson, agent for the plaintiff at Minneapolis, and that he was at the time of such appointment indebted to the plaintiff on account of policies previously issued as follows: For the previous months of January and February, $1,227.07; and on May 1, 1893, he sent plaintiff a check for this amount, which was applied in payment of the indebtedness for those months. For March, $515.64, which was paid by Herber's check of June 19th. For April, $679.79, paid by like check August 11th. On September 28, 1893, Herber sent the plaintiff his check for $503.85, the exact amount of his indebtedness to it for the business for the month of May, and it was applied in payment of the account for that month. All subsequent payments to plaintiff were made by Herber by his checks, each of which corresponded exactly with the balance due for some previous month's business, and was applied by the plaintiff in payment of such month's business. In this manner all of his indebtedness to the plaintiff on account of the previous business of himself and Wilson, and his individual indebtedness, were paid, except for the last month of his agency, October, 1894. All payments were so applied by the agreement, express or implied, of plaintiff and Herber.

The plaintiff claims that the surety, Wright, is bound by such application of the payments, even if the money remitted, and so applied to the extinguishment of Herber's indebtedness which existed prior to the taking effect of his appointment as sole agent, was received by him in payment of premiums for the payment of which the surety was holden. The surety, on the other hand, claims that the creditor and his principal, as against him, could not apply money, collected by the principal for premiums due for policies issued by him under the appointment for which the bond was given, to the payment of such prior indebtedness, and that the money so applied was in fact money collected for such premiums. It is apparent that if the money remitted June 19 and August 11, 1893, were applied on Herber's indebtedness for premiums on policies issued after May 1, 1893, there would be no shortage in his account for the time covered by this bond; but, if the application of these payments made by the parties is binding on the surety, he is liable on the bond for the amount claimed. The bond in this case did not secure past defaults of the principal.

It is true, as a general proposition, that a surety cannot direct the application of payments made by his principal, and is bound by any application made by the principal and creditor, or either of them. Allen v. Jones, 8 Minn. 172 (202). This rule, as thus broadly stated, applies to cases only where the principal makes the payment from funds which are his own, and free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable. Hence, where the specific moneys paid to the creditor, and applied on a debt of a principal for which the surety is not held, are the very moneys for the collection and payment of which he is obligated to the creditor, he is not bound by such application, and is equitably entitled to have the moneys applied to the payment of the debt for which he is surety, unless the creditor can show that he has a superior equity to have them applied as they were applied. The adjudged cases are not harmonious on this proposition, but any attempt to here cite and analyze them would be unprofitable. Many of them which are apparently conflicting may be reconciled by observing the distinction between payments made from funds which were the absolute property of the principal, and those made from funds affected by an equity in favor of the surety. Upon principle, we hold that the proposition we have stated is correct.

There are some general statements made in the case of County v. Willard, 39 Minn. 125, 39 N. W. 71, cited and relied upon by the plaintiff, opposed to this conclusion. The case referred to was an action against the sureties on the bond of a county treasurer for his second term. The trial court found that the defalcation for the recovery of which the action was brought occurred during the principal's second term, and the question before this court on appeal was whether this finding was sustained by the evidence, and the court held that it was. It was undisputed that the principal, on surrendering the office at the end of his second term, did not account or pay over all funds then chargeable to him; and it was held that the sureties on the second term bond were prima facie responsible for the deficiency, and, further, that the burden was upon them, if they would exonerate themselves, to show that the deficiency occurred during the prior term, and that the fact that there was a deficiency during the first term did not conclusively show that such conversion was identical with the deficiency

in question, there being evidence of continued conversion during the second term.

The case was properly decided upon the ground that the evidence sustained the findings of fact made by the trial court. But in the syllabus and opinion the general statement was made to the effect that, if public money received by the principal during the second term were misapplied to cover a prior delinquency occurring in the first term, the sureties on the second bond would be liable. This holding was not necessary to a decision of the case, and must be regarded as the incidental conclusion of the justice writing the opinion. It cannot be regarded as the law of this state, for it would be inequitable to permit the treasurer to apply public money coming into his hands during his second term to the payment of a defalcation occuring in his first term, and thereby shift the liability rightfully resting upon his sureties on the first bond to those on the second. If such a transaction were sanctioned by the court, then it would be lawful to rob Peter to pay Paul.

The case of Inhabitants v. Bell, 9 Metc. (Mass.) 499, cited in the opinion in the case of County v. Willard does not support the general statement therein to which we have referred. On the contrary, it is in harmony with the views which we have here expressed. The facts in the Massachusetts case were that the money received by the collector on the tax warrants during his second term, and paid on the arrears of taxes collected during his first term, was his own money, and not that of the town for which he was collector. The decision of the court in that case seems to have been placed on this ground, for the opinion states, at page 503:

"The case discloses no knowledge, on the part of the town, of the source whence the money was derived, which was applied in part payment of the taxes of 1840 [the previous term]. Neither is it a case of misapplication of any specific funds which the collector was bound to pay to the treasurer of the town. The specific money received by a collector, in the collection of taxes, is his money, and not that of the town."

The respondent also cites in support of his claim the following cases in this court: Hersey v. Bennett, 28 Minn. 86, 9 N. W. 590; Tomlinson v. Simpson, 33 Minn. 443, 23 N. W. 864; Board v. Citizens, 67 Minn. 236, 69 N. W. 912. None of these cases support his contention. The

first one simply declares the general rule as to the application of payments,—that where no appropriation is made by either party, and there is one continuous account of several items, the payments will be applied according to the priority in time of the items. The second was a case where a guardian had blended two funds belonging to his ward, one of which was secured by his bond, and the other not. He had made disbursements for the benefit of his ward generally out of the fund as an entirety, and it was held that the credits must be applied in reduction of the entire claim, and the balance apportioned between the two funds; that the surety had no equity to have the credits exclusively applied to extinguish the fund for which he was liable, nor the ward any right to have them exclusively applied to extinguish the fund for which the surety was not liable. The court also stated, with reference to the general rule as to the application of payments, "We have found no well-considered case where the law has applied this rule to the prejudice of a surety." In the last case cited the court recognized and applied the rule that where the principal makes payments with money which is his absolute property, free from any equity in favor of his surety, he may apply them as he pleases; but, if no application is made by either party, the law will apply the payments on the account according to the priority of time.

Now in this case all moneys received by Herber in payment of premiums, less commissions and charges, were the property of the plaintiff, and for their payment the surety, Wright, was bound. He was therefore equitably entitled to have all money received for premiums for which he was liable applied in extinguishment of such liability, notwithstanding the agreeement of the creditor and his principal to apply them on the latter's prior indebtedness. But the burden was upon the surety to show that the money which was remitted to the plaintiff and applied on such prior indebtedness during the time covered by his bond was in fact received by Herber for premiums on account of policies issued during such time. The mere fact that money which was remitted during such time was so applied is not sufficient; for if the money so applied was Herber's, or was received for premiums on insurance antedating the commencement of his sole agency, or was not in fact money received for premiums on policies issued after the execution of the bond, the plaintiff and Herber had the right

to apply it without reference to the surety. This brings us to the practical question in this case: Is the evidence sufficient to sustain the finding of the jury, necessarily included in the verdict, to the effect that the money applied on the prior indebtedness of Herber was received by him in payment of premiums for insurance written for the plaintiff during the time covered by the bond?

It is the contention of the defendant that this question cannot be considered on this appeal, because the record contains no settled case containing all of the evidence on the trial, but only a bill of exceptions, which does not purport to contain all of the evidence. It appears, however, from the bill of exceptions, that it contains all of the evidence on the question suggested; hence the record is sufficient to enable the plaintiff to here raise the question. The only evidence in the case as to the source whence the money was derived which was applied on the principal's prior indebtedness was the testimony of Herber, who was called on this point by the defendant Wright. On his direct examination he testified generally that the payment made by the check of June 19, 1893, came from moneys collected for the business during the previous month of May, principally; and as to the payment made by the check of August 11, 1893, that the money was derived from the business of the agency during the previous month of July. It appeared, however, from his testimony, that the agency consisted of four companies, including the plaintiff; that he kept no specific account of the money collected for the plaintiff in any month, but that he put all the premiums collected for all of his companies into one fund, and deposited it in the bank in his own name; that all of the money which he received for business done for all of his companies went into this common fund. The checks in question were drawn upon and paid from this common fund.

His testimony on the cross-examination leaves it a matter of pure speculation whether the checks in question, or any part thereof, were in fact paid from money collected for premiums for insurance written by him for this plaintiff during the time covered by the bond. We are not to be understood as holding that it was necessary for the surety to show that the identical money received for such premiums was applied in payment of the checks. It would have been sufficient for him to have shown that money was in fact collected for such pre-

miums, and paid into the common fund in the bank, and that it remained a part thereof until the checks were paid. The burden was on the surety to establish with reasonable certainty that the money received for the premiums for which he was liable on his bond was in fact a part of such common fund, and so used to pay the prior indebtedness of his principal. He failed to do so. The evidence is not sufficient to sustain the verdict. It follows that the trial court erred in refusing to instruct the jury to return a verdict for the plaintiff, and that the order appealed from must be reversed, and a new trial granted.

So ordered.

CANTY, J. I concur in the result, and in the reasons given for that result, except in so far as the opinion fails to confine those reasons to cases between principal and agent, where the money delivered by the agent to the principal always was the money of the latter. As a general rule, money has no ear-marks, and, where merely the relation of debtor and creditor exists, there are few equities which entitle the surety for the debtor to change the application of money paid by the debtor to the creditor, where the latter was ignorant of the equities of the surety when the money was received and applied. But, where the agent is delivering to his principal the principal's own money, the agent cannot make his sureties liable by merely placing a wrong label on the money, unless strong equities have thereby arisen in favor of the principal. Neither the alleged payment nor attempted application of the money gave the principal title to it, but the money was his before either payment or application; and, as against such a surety, neither party has a right to change the character of or title to such money by any such application, but the source from which the money comes must alone determine its application, unless the principal has been so deceived and prejudiced as to raise such an equity in his favor, as, for instance, where, on the faith of the application of the money, he has innocently and in good faith parted with a new consideration, or surrendered up a security, and cannot be placed in statu quo. This is the rule that is usually applied in cases against sureties on the bonds of public officers. See 2 Am. & Eng. Enc. Law (2d Ed.) 465.

But the law is less favorable to such sureties than it is to sureties on private bonds and contracts. The true distinction is not between cases of public and private bonds and contracts, but between the relation of principal and agent, and the relation of creditor and debtor. In the absence of any countervailing equity in favor of plaintiff, the defendant sureties have a right to insist that the moneys paid to plaintiff and received for premiums on policies issued by plaintiff during the term covered by the bond shall be applied accordingly. True, it appears that trust funds received by Herber from various sources, together with his commissions, were deposited in one account in the bank, and thereby commingled. Plaintiff would have a right to trace the moneys belonging to it into this commoun fund, and recover them back out of it; and these sureties also have a right to trace into this fund, and out of it, the moneys received by Herber for which these sureties are liable. But the burden of proof was on them to establish this equity in their favor, and they failed to maintain that burden. It does not appear what part of this common fund was made up of these latter moneys, what part was money received on the prior business done for plaintiff by Herber and Wilson, what part was commission, and what part was other trust funds, or how the common fund was divided up and disposed of. When all these facts appear, it may be that most of the money received by plaintiff out of this common fund should be regarded as coming from other sources than the business done by Herber during the time covered by this bond, and it is no concern of these sureties how Herber or plaintiff applied the money coming from such other sources.