No. 20,227.

## THE CRANE COMPANY, *Appellant*, v. THE WICHITA UNION TERMINAL RAILWAY COMPANY et al., *Appellees*.

### SYLLABUS BY THE COURT.

TERMINAL RAILWAY STATION — *Materialmen's Lien* — *Payments to Subcontractor*—*Application of Payments made by Subcontractor*—*Liability of Surety on Indemnity Bond*. A contractor who contracted to erect a union station for a union terminal railway company gave bond to pay materialmen, pursuant to section 7006 of the General Statutes of 1909. The bond was signed by the contractor and by a surety company. The contractor sublet the plumbing and the plaintiff sold plumbing material to the subcontractor. While the union station was building the plaintiff furnished other material to the subcontractor for use at other places, separate accounts being kept for each piece of work. The contractor would notify the plaintiff when it made payments to the subcontractor and the subcontractor would then make payments to the plaintiff. The subcontractor paid the plaintiff by his own checks drawn on his own bank account, and in each instance directed the account or accounts to which the check should apply. In an action on the bond for a balance due from the subcontractor on the union station account the court instructed the jury that the subcontractor had a right to direct how his payments to the plaintiff should be applied and that if he had done so the jury should observe that application. *Held*, the plaintiff was not required to ascertain from the contractor how much money the subcontractor had received and that the instructions were correct.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed June 10, 1916. Reversed.

*T. A. Noftzger, George Gardner*, and *George W. Cox*, all of Wichita, for the appellant.

*John W. Adams, George W. Adams*, and *G. L. Skidmore*, all of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to enforce a bond to pay materialmen, required of a railway contractor. The plaintiff recovered. The court granted a new trial and the plaintiff appeals.

Crane Co. v. Terminal Railway Co.

The Dieter & Wenzel Construction Company entered into a contract to construct a union station for the Wichita Union Terminal Railway Company. The railway company took from the contractor a bond in accordance with the provisions of section 7006 of the General Statutes of 1909, which reads as follows:

"That whenever any railroad company shall contract with any person for the construction of its road or any part thereof, such railroad company shall take from the person with whom such contract is made a good and sufficient bond, conditioned that such person shall pay all laborers, mechanics and materialmen, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons, or to any person to whom any part of such work is given, incurred in carrying on such work; which bond shall be filed by such railroad company in the office of the register of deeds in each county where the work of such contractor shall be. And if any such railroad company shall fail to take such bond, such railroad company shall be liable to the persons herein mentioned to the full extent of all such debts so contracted by such contractor."

The bond was signed by the contractor and by a surety company. The contractor sublet the plumbing to William Crombie, who did business under the name of the City Plumbing and Heating Company. The plaintiff, Crane Company, furnished plumbing material to the subcontractor. While the union station was building the plaintiff furnished other material to Crombie for use at other places, separate accounts being kept for each piece of work. Crombie paid the plaintiff by means of his own checks drawn on his own bank account and in each instance directed the account or accounts to which the check should apply. The plaintiff sued on the bond for a balance due on the union station account. The defenses were that the bond did not cover the material furnished by the plaintiff, payment, and estoppel. The defense of estoppel was not submitted to the jury and the only meritorious issue was that of payment. The evidence relating to the material facts was quite conflicting. The court instructed the jury that Crombie had the right to direct how his payments to the plaintiff should be applied and that if he had done so the jury should observe the application. The verdict sustained all the plaintiff's contentions. The

journal entry of the order sustaining the motion for a new trial reads as follows:

"The court being fully advised in the premises, doth sustain said motion for a new trial, and does grant said new trial only for the reasons that the Dieter & Wenzel Construction Company was surety for Crombie to Crane Company and that the said Dieter & Wenzel Construction Company paid money to Crombie and notified the Crane Company that they had paid the money to Crombie and that Crombie then paid the money to Crane Company. This ruling is based upon the following cases: *Crane Bros. Mfg. Co. v. Keck*, 35 Neb. 683, 53 N. W. 606; *Lee v. Storz Brewing Co.*, 75 Neb. 212, 106 N. W. 220; *Merchants Ins. Co. v. Herber*, 68 Minn. 420, 71 N. W. 624; and the court further finds that at the time said money was paid by Crombie to Crane Company that Crane Company should have ascertained from The Dieter & Wenzel Construction Company how much money Crombie had received from the Dieter & Wenzel Construction Company."

The finding of fact contained in the first part of the order was based on the following testimony given by the plaintiff's manager at the trial, and consequently binding on the plaintiff:

"At the time when he would call me up he would tell me that he gave Crombie a check and I would tell him that we got a check. He never told me the amount of the check. We were getting checks at this time from Crombie on his general account and on the Bonham, Texas, job."

The question is whether or not this admission rendered the instruction to the jury improper, and whether or not the conclusion of law stated as a finding in the latter part of the order is correct or material.

This court has hitherto followed the beaten path of the law relating to application of payments. A debtor has the right to direct how a payment on his indebtedness shall be applied. If the debtor give no direction the creditor may make the application according to his pleasure. If neither the debtor nor creditor has applied the payment, the law will do so, and generally will apply the payment to the oldest item or oldest debt, and to unsecured in preference to secured debts, although under special circumstances justice may require a different application. In this case the contractor simply paid Crombie what it owed him. The payment was made without reservation to satisfy the contractor's own debt. Unconditional title to the money passed to Crombie and it became his, free from any right or equity in the contractor to control his use of it. He could pay his taxes or club dues with it or could pay such

of his merchandise creditors as he desired. When Crombie deposited the money in the bank to his general account it lost its identity, and when he gave his check to the plaintiff and directed the plaintiff to apply the proceeds in a specific way the plaintiff had no choice with respect to its conduct. It was obliged to apply the money as directed. The contractor acted in a dual capacity. It was an ordinary contractor under obligation to pay those whom it employed to construct the station. It was the principal on a bond given to the railway company for the use and benefit of laborers and materialmen. It did not make its payments to Crombie in its capacity as obligor in the bond. It paid as any debtor pays his creditors. Doubtless the contractor notified the plaintiff of payment to Crombie in order that the plaintiff might press Crombie for money. The contractor did not, however, satisfy its bond to pay materialmen who supplied Crombie with material by notifying them that it had paid Crombie. Crombie could apply his own money in his own way and if the plaintiff had inquired of the contractor how much Crombie had been paid the plaintiff would still have been obliged to apply the money received from Crombie according to Crombie's direction.

The statute quoted is a substitute for a mechanic's-lien statute for the protection of laborers and materialmen who aid in railway construction. The lien is upon the bond, as in the case of statutory bonds to protect contributions of laborers and materialmen to public works not subject to lien (*Griffith v. Stucker*, 91 Kan. 47, 50, 51, 136 Pac. 937), and as in the case of bonds given under section 660 of the code. All these statutes have a common purpose and the decision in the case of *Lumber Co. v. Douglas*, 89 Kan. 308, 131 Pac. 563, is controlling here. In that case a bond was given under section 660 of the code. A materialman furnished lumber to the contractor. Money paid the contractor on the contract was paid to the materialman without direction as to how it should be applied. The materialman applied the money to the satisfaction of earlier indebtedness for material used in other buildings. The suit was on the bond. It was held that the money paid the contractor was his own money which he could use as he chose. The bond did not require materialmen to watch the source from which money paid them was derived; the bond

did not require that money received by the contractor under the contract should be paid to materialmen; and no equity existed in favor of the surety requiring that money received by the contractor and by him paid to the materialman should be applied to the debt secured by the bond. The liability of the surety was measured by the bond, which required unconditional payment of the claims of laborers and materialmen. The bond in this case is of the same character and the liability of the obligors is measured in the same way.

In the case of *Lumber Co. v. Douglas* the surety on the bond was a surety company which signed the bond for profit, and it was held that such a surety is not looked upon with the same favor as a person who voluntarily undertakes to answer for the obligation of another. The same rule applies to the surety on the contractor's bond in this case. Neither did the contractor voluntarily undertake to answer for the obligation of another as in cases of ordinary suretyship. The statute imposed on the railway company the duty to take the bond for the protection of laborers and materialmen, and a corresponding duty rested on the contractor to give the bond when requested to do so by the railway company. Consequently the contractor is not in a position to ask favors usually accorded an ordinary surety.

In the case of *Crane Bros. Mfg. Co. v. Keck,* 35 Neb. 683, 53 N. W. 606, cited by the district court, the Crane Company sold plumbing material to Walther, a contractor, who placed it in Keck's building. Keck paid Walther, who turned the money over to the Crane Company without direction as to how it should be applied. The Crane Company applied it to another account of Walther's and filed a mechanic's lien on Keck's building. The action was one to foreclose the lien. It was held that a creditor's right to apply money paid by his debtor without direction as to its application was subject to an exception when the money came from a third person whose property would be liable if the money were not applied to relieve the third person of liability. The case of *Lee v. Storz Brewing Co.,* 75 Neb. 212, 106 N. W. 220, cited by the district court, was similar in its facts to the Keck case and the same rule was applied. These decisions are directly opposed to that of this court in the case of *Presbyterian Church v. Santy,* 52

Kan. 462, 34 Pac. 974. In that case a hardware company furnished material to Thompson, a contractor, to erect a church building. The trustees of the church paid Thompson money on his work and out of this money Thompson paid the hardware company more than the total amount of the material furnished for the building. In the absence of direction by Thompson as to how the money should be applied the hardware company gave him credit on his general account. Afterwards the hardware company filed a mechanics' lien on the building, and in an action to foreclose the lien the trustees contended that the money they furnished should be applied to pay for the hardware which went into their building. The district court gave judgment for the hardware company, which was affirmed on appeal. The syllabus of the decision reads:

"A party paying money to his creditor may direct its appropriation. If he fails to do so, the creditor may apply it on such part of the payer's mature indebtedness to him as he sees fit." (¶ 2.)

In the case of *Merchants Ins. Co. v. Herber,* 68 Minn. 420, 71 N. W. 624, cited by the district court, Herber was an agent of the insurance company and gave bond to discharge his duties and remit premiums collected according to instructions. The instructions were that all premiums were the property of the insurance company, and all collections for any month should be remitted by the fifteenth of the next month. Herber had been a member of a partnership which had acted as agent of the insurance company and which was behind with remittances. The bond did not cover past business. Herber made remittances more than sufficient to cover premiums collected while he acted as sole agent. The insurance company applied them to the old account, and when the agency terminated Herber was still indebted to the insurance company. In denying liability on the bond the court said:

"It is true, as a general proposition, that a surety can not direct the application of payments made by his principal, and is bound by any application made by the principal and creditor, or either of them. (*Allen v. Jones et al.,* 8 Minn. 202.) This rule, as thus broadly stated, applies to cases only where the principal makes the payment from funds which are his own, and free from any equity in favor of the surety to have the money applied in payment of the debt for which he is liable. Hence, where the specific moneys paid to the creditor, and applied on

a debt of a principal for which the surety is not held, are the very moneys for the collection and payment of which he is obligated to the creditor, he is not bound by such application, and is equitably entitled to have the moneys applied to the payment of the debt for which he is surety, unless the creditor can show that he has a superior equity to have them applied as they were applied." (p. 424.)

In that case the bond was in fact literally complied with. For other reasons stated in the opinion it furnishes no support for the claim of the contractor in this case.

The brief for the contractor proceeds on the theory that the district court did not approve the verdict for reasons other than those stated on the record and sustained the motion for a new trial generally. The theory can not be made to work. The court carefully stated the specific ground on which the motion for a new trial was granted. That ground not being tenable, the court erred in granting the new trial.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment on the verdict.