No. 25,343.

OLIVER P. STEELE et al., *Appellees*, v. THE CITIZENS STATE BANK OF MANHATTAN, R. B. SPILMAN, Receiver, and S. J. PRATT, *Appellants.*

SYLLABUS BY THE COURT.

1. FRAUD—*Exchange of Property—Action for Rescission—Evidence.* There was evidence sufficient to prove fraud.

2. SAME—*Right of Person Defrauded in Land Trade to Rescind Contract.* A person defrauded in a land trade has the right to rescind on complete discovery of the fraud, although he has been in possession of the land received by him, and although he did not attempt rescission when he first received information, after the trade was made, that some false statements had been made to him by the other parties to the transaction.

3. SAME—*Receiver—Property Acquired Through Fraud—Property Ordered Returned to Person Defrauded.* Real property in the hands of a receiver of a bank acquired by the bank through fraud can be ordered returned to the person defrauded in an action by him to rescind the transaction, and his claim to the property may be ordered preferred to the claims of general creditors of the bank.

4. SAME—*Money Acquired Through Fraud Held as Trustee of Person Defrauded—Preferred Claim Against Receiver of Insolvent Bank.* Money received by the bank in such a transaction as is mentioned in the second and third paragraphs of this syllabus is held by the bank as trustee for the person defrauded, and judgment therefor will be declared a preferred claim against a receiver of the bank if it is shown that the assets in the hands of the receiver were augmented by the money received by the bank.

5. SAME—*Rescission of Contract—Person Defrauded May Hold Property Received by Him Until Made Whole.* One who gives unincumbered real property in exchange for other real property, notes and mortgages, and is defrauded in the transaction, on a rescission thereof may hold the property received by him until the property he gave in exchange is returned to him free and clear of encumbrances placed thereon by the party to whom it was given in the exchange.

Steele *et al.* v. State Bank *et al.*

. Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed July 5, 1924. Modified.

R. P. *Evans,* and *George Clammer,* both of Manhattan, for the appellants.
- C. B. *Daughters,* of Manhattan, for the appellees.

The opinion of the court was delivered by

. MARSHALL, J.: The plaintiffs brought this action for rescission of contract on the ground of fraud, for the recovery of certain real property, and for damages. Judgment was rendered for the plaintiffs for the real property and for $11,945.22, which was declared a preferred claim against the defendant bank. The defendants appeal.

The action was tried without a jury and the court made findings of fact and conclusions of law. Part of these findings may be briefly summarized as follows: That on April 29, 1921, the plaintiffs, who were husband and wife, owned an unincumbered farm in Washington county, where they lived; that they were of limited education, had little experience in business or land values, and were "unusually credulous, unsuspecting and unsophisticated people"; that defendant Pratt was president and active managing officer of the defendant bank; that the bank owned a tract of land in Riley county, known as the Gould land, the legal title to which was in defendant Pratt; that on April 29, 1921, the plaintiffs and defendant Pratt, acting for the bank, entered into a contract whereby the plaintiffs agreed to trade their Washington county farm for the Gould tract, a note and mortgage for $1,500 known as the Brunkow note and mortgage, another note and mortgage for $1,100 known as the Dickerhoof note and mortgage, and two notes signed by defendant Pratt, one for $2,500 and the other for $7,900, the notes aggregating $13,000, and being given to plaintiffs to equalize the difference in value of the properties of $8,000 and to cover a mortgage of $5,000 on the Gould land; that on the same day deeds in accordance with the contract were executed and delivered, and the notes and mortgages were delivered to the plaintiffs; that on the next day, April 30, defendant Pratt placed with an innocent third party mortgages of $10,700 on the plaintiffs' land; that one of the mortgages was for $700 in payment of commission on the $10,000 mortgage; that from the proceeds of the $10,000 loan the mortgagors retained $200 with which to paint the buildings on the farm, and Pratt paid $250 commission to his agent Irish for making the deal with the plaintiffs, paid to the bank $1,030, which was paid to the plaintiffs to apply on

Pratt's notes to them, retained $1,020 to reimburse himself for expenses on the Gould land while he held it as security for Gould's indebtedness to the bank, and paid the bank $5,000 to apply on the Gould indebtedness and $2,500 to apply on charged-off items of the bank, representing loans made by the bank to its customers; that $212.36 was paid by the mortgagee for insurance; that on June 1, 1921, Pratt and his wife conveyed the plaintiffs' land to the bank without receiving any consideration therefor; and that before the contract was entered into with the plaintiffs, the defendant Pratt and his agent Irish, "with the intent and purpose of deceiving and defrauding the plaintiffs of their property," represented to the plaintiffs that the Gould land was worth $25,000, that it had cost the bank $30,000, that it was within a city school district, that the Gould house was adaptable for rental to students and would produce a good income, that the Brunkow and Dickerhoof notes were made by reliable men, were amply secured, and absolutely good, that Pratt was solvent and his notes were the obligations of the bank, and that it was a bank transaction throughout. Further findings were that all of such statements, except that it was a bank transaction, were untrue and were misrepresentations and were "part of a cunningly devised scheme to defraud the plaintiffs of their land"; that the plaintiffs relied on those statements; that on September 19, 1921, the bank was found insolvent; that on October 18, 1921, defendant Spilman was appointed receiver of the bank; that he had nothing to do with or knowledge of the transaction between Pratt and Irish and the plaintiffs; that no rent was received from the Steele property for the year beginning March 1, 1922, and ending on March 1, 1923; and that the plaintiffs occupied the Gould property until July 21, 1923, the date judgment was rendered. The court also found—

"25. That by reason of fraud of the defendant bank the plaintiffs have been damaged as follows:

| | |
|---|---:|
| On account of the mortgage placed upon the Steele land by Pratt, as agent of defendant bank, the principal sum of | $10,000.00 |
| Accrued interest to July 21, 1923 | 1,782.50 |
| Principal of commission mortgage | 700.00 |
| Accrued interest to July 21, 1923 | 120.85 |
| | $12,603.35 |
| That the plaintiffs should be charged with the payments made upon the Pratt note, which payments were made from the money received from the Steele farm loan, and amount to | 1,030.00 |
| Leaving a balance of | $11,573.35 |

which should draw interest from June 21, 1923, at 10 per cent per annum.

"That by reason of said fraud the plaintiffs have been further damaged as follows:

| | |
|---|---:|
| Because of insurance paid under farm loan | $212.36 |
| Accrued interest to July 21, 1923 | 28.26 |
| Commission paid to Sliger by Steeles | 600.00 |
| Rental of Steele's farm from March 1, 1922, to March 1, 1923 | 500.00 |
| | $1,340.62 |
| That the plaintiff should be charged the use of the Gould land from May 5, 1921, to July 1, 1923, amounting to | $800.00 |
| With payments of interest made on the Brunkow note | 168.75 |
| | $968.75 |

leaving a balance of $371.87, which should draw interest from July 1, 1923, at the rate of 6 per cent per annum."

The court's conclusions of law were as follows:

"That by reason of fraud and misrepresentations of the defendant, The Citizens State Bank of Manhattan, Kansas, by its president and managing officer, S. J. Pratt, and by its agent, A. E. Irish, the plaintiffs should be allowed to rescind the sale of their land made on April 29, 1921, and should be restored to all rights possessed by them before said sale so far as restoration by the court is possible and practicable, and that where restoration is impossible or impracticable they should be allowed damages in lieu thereof:

"2. That plaintiffs have been damaged by reason of said fraud in the sum of $11,954.22; that the plaintiffs should have judgment for said sum against the defendant, the Citizens State Bank of Manhattan, Kansas; that said judgment should be declared a trust fund and preferred claim against said defendant bank; and that the sum of $11,573.35 of said judgment should draw interest from July 21, 1923, at the rate of 10 per cent per annum, and that the remainder of said judgment, to wit, the sum of $371.87, should draw interest from July 21, 1923, at the rate of 6 per cent per annum.

"3. That judgment should be entered against the defendant bank in accordance with conclusions Nos. 1 and 2; and a further judgment that said bank, and receiver thereof, within thirty days from this date conveys to plaintiffs the said Steele land, and that plaintiffs within the same time convey to said defendant bank the said Gould land, and that in default of either or both of said conveyances, said judgment shall operate as a conveyance of said lands; that the deeds of Steeles to Pratt (dated April 29, 1921) and Pratt to the bank (dated June 1, 1921) of the Steele land, and deed of Pratt to the Steeles of the Gould land (dated April 29, 1921) be canceled and held for naught; that the clerk of this court deliver to said bank, at its request and upon proper receipt, the Dickerhoof note and the Brunkow note and the mortgages securing same; that within ten days from this date the plaintiffs assign said mortgages to the defendant bank, and upon plaintiffs' failure so to do, said judgment shall operate as an assignment thereof; that the clerk shall also deliver to defendant Pratt, at his request and upon proper receipt, the note of Pratt to Steeles, due June 1, 1921, for $2,500; and the note of Pratt

to Steeles, due March 1, 1922, for $7,900; and that plaintiffs recover of the defendant bank and the defendant Pratt their costs in this action."

Judgment was rendered in accord with the conclusions of law.

1. The defendants contend that fraud was not proved. With that contention the court cannot agree. There was evidence to support each of the findings of fact made by the court. Those findings have been summarized. They show that fraud was practiced by the bank and Irish on the plaintiffs.

2. Another argument is that the plaintiffs were not entitled to rescission. This argument is partly based on the contention that the contract for the exchange of land was made in April, 1921, and rescission was not attempted until the commencement of this action in June, 1922. The argument is also partly based on the contention that the plaintiffs were in possession of the property which had been transferred to them and that they had knowledge of the fact that fraud had been practiced on them. There was some evidence which tended to show that the plaintiffs, soon after the trade was made, learned that some of the representations made were false, but there was evidence to show that full knowledge of the fraud was not obtained by the plaintiffs until shortly before the commencement of this action. The argument that the plaintiffs were not entitled to rescission is not good.

3. Another contention of the defendant is that it was error to declare the judgment a preferred claim against the bank. The real property received by the bank in the transaction with the plaintiffs found its way into the hands of the receiver. The plaintiffs were entitled to the return of that property. So far as that property was concerned, the claim of the plaintiffs against it was preferred to that of the general creditors of the bank.

4. Judgment was rendered against the bank for $11,945.22, which was declared a preferred claim against the assets of the bank in the hands of the receiver. It is contended that the order declaring the judgment a preferred claim was erroneous.

We quote from 39 Cyc. 104 as follows:

"It has been said that a resulting trust will arise in certain cases of fraud where transactions have been carried on *mala fide.*"

We quote further from the same authority, on page 169, as follows:

"Constructive trusts do not arise by agreement or from intention, but by operation of law; and fraud, active or constructive, is their essential element.

Steele *et al.* v. State Bank *et al.*

Actual fraud is not necessary, but such a trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title."

We also quote from page 172 as follows:

"One who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property."

In *Newell v. Newell,* 14 Kan. 202, this court said:

"Where the defendant by false and fraudulent representations obtained a deed of conveyance from the plaintiff, but never paid anything for the property conveyed, and the plaintiff afterwards placed the defendant in as good a condition as he was before the conveyance, and in the same condition, it is not error for the court to hold, when asked to do so by the plaintiff, that the defendant holds the legal title to the property conveyed in trust for the plaintiff, and to render judgment in favor of the plaintiff for the title to said property." (Syl. ¶ 2.)

The rule declared in *Newell v. Newell* was followed in *Kahm v. Klaus,* 64 Kan. 24, 67 Pac. 542, where the court said that—

"A woman was in disagreement with her brother over a tract of land. Her brother-in-law advised her to give him a power of attorney to manage the land for her, because, as he said, he could contend better with her brother. He gave her a paper which he represented to be such instrument. Having confidence in him on account of their relationship, she signed the paper without reading it. It was in reality a deed to him of the land. *Held,* that he became a constructive trustee and was bound to reconvey the land and account for its rents and profits." (Syl. ¶ 1.)

Under these authorities both the real property and the money that came into the hands of the bank was held by it as trustee for the plaintiffs. No further discussion is necessary concerning the real property that was received by the bank.

The record must be examined to ascertain what money was received by the bank. The findings show that out of the $10,000 mortgage placed on the land belonging to the Steeles', the bank received $7,500. The remaining $2,500 was disposed of as follows: $1,030 was paid to the plaintiffs to apply on Pratt's note to them; Pratt retained $1,020 to reimburse himself for expenses on the Gould land; $250 was paid to Irish as commission for making the deal with the plaintiffs; and $200 was retained by the mortgagors with which to paint the buildings. All this amounts to $2,500, which was not received by the bank and did not become a trust fund. The $7,500 did become a trust fund.

The twenty-fifth finding of the court shows that in the judgment for $11,945.22 was included $1,782.50 interest on the $10,000 mortgage; a commission mortgage of $700 and interest thereon in the sum of $120.85; a further sum of $212.36 paid for insurance under the farm loan and interest on that insurance of $28.26; $600 paid by the plaintiffs to Sliger for commission; and $500 rent on the Washington county land from March 1, 1922, to March 1, 1923. These items constituted damages caused by the bank, but it cannot be said that they were received by the bank. If not received by the bank they cannot be declared to be any part of a trust fund in the hands of the bank.

In 34 Cyc. 348 this language is found:

"Where a transaction establishes a fiduciary relation between the parties, and not the relation of debtor and creditor only, a trust is created, the violation of which constitutes a fraud by which the trustee or his receiver cannot profit, and entitling the *cestui que trust* to prior payment out of the funds in the hands of the receiver."

In *Investment Co. v. Bank*, 98 Kan. 412, 158 Pac. 68, this court said:

"The owner of money fraudulently obtained and used in the business of an insolvent bank, by its cashier, is not entitled to repayment by the receiver, in preference to other creditors, except so far as he shows that the assets which reached the hands of the receiver were larger by reason of such transaction than they would otherwise have been; it is not enough to show that the assets of the bank were increased, or that the money was used in reducing its indebtedness."

That rule was followed in *Nelson v. Paxton, Receiver*, 113 Kan. 394, 214 Pac. 784, and in *Honer v. State Bank*, 114 Kan. 123, 216 Pac. 822.

So far as the abstracts show, there was no evidence to show that the funds in the hands of the receiver were augmented by the money received by the bank out of the transaction with the plaintiffs.

5. There is another matter that requires attention—the right of the plaintiffs to a lien on the property received by them in exchange for that which they conveyed to the bank, or the right to hold the property received by them until the property they gave therefor has been returned to them unencumbered. This would not require any attention if the property received by the bank were in such condition that it could be returned to the plaintiffs as it was when they conveyed it to the bank. It is not in that condition. The unencum-

bered land they conveyed has been heavily encumbered by the bank, and that encumbrance is now a valid lien on the property. The judgment requires them to convey to the bank the land received by them from the bank, and requires the clerk of the district court to turn over to the bank the Dickerhoof and the Brunkow notes, with the mortgages securing them, and to turn over to S. J. Pratt the notes executed by him to the plaintiffs. They should not be compelled to make such a conveyance, and the clerk of the district court should not be permitted to turn over the notes mentioned until the plaintiffs have had returned to them the Washington county land unencumbered.

Black on Rescission and Cancellation, volume 2, section 694, contains the following language:

"Whenever, in an equitable action for the rescission or cancellation of a contract, it appears necessary to the protection of an injured or defrauded party that he should hold a lien on the property received by him under the contract, he may be adjudged to have a right equivalent to a lien on such property to secure the restoration of the consideration which he parted with, and the court may adapt its decree so as to adjudge the extent of the lien, fix it upon the property, and provide for its just enforcement. Under this rule, when a contract for the sale of land or a conveyance of it is set aside, whether at the suit of the vendor or of the vendee, if the latter has paid the purchase money or any considerable part of it, he is entitled to have it returned to him, and if the circumstances of the case seem to require it, the court may award him a lien on the land for the amount of such purchase money, or decree that the land shall stand as security for its repayment."

The statement quoted is supported by the following cases there cited: *Hall v. Bank of Baldwin*, 143 Wis. 303; *McWilliams v. Jenkins*, 72 Ala. 480; *Deere & Co. v. Young*, 39 Iowa 588; *Barbour v. Morris, Adm'r, etc.*, 6 B. Monroe 120, 127 (Ky.); *Wolfinger v. Thomas et al.*, 22 S. D. 57, 64; and *Costen v. McDowell*, 107 N. C. 546. See, also, the following: *Page Belting Co. v. Prince*, 77 N. H. 309; *Flickinger v. Glass*, 222 N. Y. 404; *Busath v. Prival*, 95 Atl. 36 (N. J. Ch.); *Flickinger v. Glass*, 170 N. Y. Supp. 459.

39 Cyc. 2031 contains the following language:

"The rule which has obtained for many years in this country and in England is that the purchaser of land by an executory contract, where the contract fails by reason of vendor's default, and without any fault of the purchaser, is entitled to a lien upon the land for the repayment of what he has paid under the contract. If the contract fails or is avoided because of the inability or refusal of the vendor to make a marketable title, or title free from incumbrances, or because of fraud or misrepresentation in the contract, or for any other reason which is chargeable to the vendor and which is not

due to default on the part of the purchaser, the latter is given a lien upon the land as security for the repayment of what he has paid in performance of the contract."

This right of the plaintiffs to hold the property received by them is limited to securing the return to them of the consideration they gave for that property. That consideration was the 320 acres of Washington county land, free and clear of all encumbrances. That property cannot be returned to the plaintiffs free and clear of encumbrances; there are mortgages on it to the extent of $10,700 and unpaid interest, which at the time the judgment was rendered amounted to $12,603.35. There was an item of insurance paid under the farm loan amounting to $212.36, and interest thereon amounting to $28.26, making a total of $240.62. This insurance was probably paid in obedience to stipulations contained in the mortgage; and, if so, it is likewise a lien secured by mortgages on the land. This makes the total of the mortgage liens $12,843.97 at the time judgment was rendered. That is more than the amount of the judgment rendered in favor of the plaintiffs.

In addition to the items which constitute the mortgage liens on the Washington county land, the plaintiffs, according to the findings of the court, sustained $1,100 damages, consisting of $600 commission paid to Sliger and $500 rent on the Washington county land from March 1, 1922, to March 1, 1923. The last two items were damages sustained by the plaintiffs and were not a part of the consideration paid by them. The authorities cited do not go to the extent of giving to the plaintiffs a lien on the property in their hands to recoup them for that commission and rent.

The plaintiffs received $1,030 payment on one of the Pratt notes and $168.75 interest on the Brunkow note and were charged with $800 rent on the Gould land from May 5, 1921, to July 1, 1923, all amounting to $1,998.75. The plaintiffs had the privilege of applying the payments made to them on that part of their claim which consisted of damages for which they had no preferred claim against the bank, and, for which they had no right to hold the property in their hands. (*Presbyterian Church v. Santy*, 52 Kan. 462, 34 Pac. 974; *Crane Co. v. Terminal Railway Co.*, 98 Kan. 336, 341, 158 Pac. 59; 30 Cyc. 1233.) The payments made to the plaintiffs and the rent charged to them, amounting to $1,998.75, were sufficient to pay the $1,100 damages and leave an excess of $898.75. The plaintiff's claim for $1,100 damages may then be considered as paid or canceled.

It has been seen that the total of the mortgage liens against the Washington county land at the time judgment was rendered amounted to $12,843.97. Deducting from that total the sum of $898.75, there remains the sum of $11,945.22, the amount for which judgment was rendered, and for all of which the plaintiffs have the right to hold the property received by them for the Washington county land, until that land is returned to them free and clear of all encumbrances.

The judgment for $11,945.22 against the bank and against the receiver is affirmed. To secure the payment of the judgment, the plaintiffs are declared to have a lien on all the property received by them—real property, notes and mortgages. The real property is ordered sold according to law, the notes are ordered sold or collected, and the proceeds of the sale of real property and of the collection or sale of the notes shall be applied to the payment of the entire judgment.

The judgment declaring the whole of the $11,945.22 a preferred claim against the funds in the hands of the receiver is reversed, and the cause is remanded with directions to ascertain whether the assets that went into the hands of the receiver were augmented by the $7,500 received by the bank; and if it be found that such assets were augmented by that amount or any part thereof, to render judgment declaring $7,500, or such part thereof as augmented the assets in the hands of the receiver, a preferred claim against the bank. If the proceeds arising from the real property and from the sale or collection of the notes do not satisfy the judgment in favor of the plaintiffs, the remainder shall be paid by the receiver as a preferred claim out of the assets in his hands to the extent of $7,500, or such part thereof as augmented the assets in his hands.