13206

SOUTHERN STATES SUPPLY COMPANY v. UNION INDEMNITY CO.

(159 S. E., 532)

Mr. P. H. McEachin, for appellant,

Mr. *Edward L. Craig,* for respondent,

July 17, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the County Court of Richland County February 4, 1930, by Southern States Supply Company against Union Indemnity Company, is based upon a contractor's bond, executed by J. F. Fitzharris, trading as Florence Plumbing & Heating Company, as principal, and the defendant, Union Indemnity Company, as surety. Issues being joined, the case was tried before Honorable M. S. Whaley, Judge of the said County Court, and a jury on the 8th day of May, 1930. At the conclusion of all the testi-

mony, plaintiff's counsel moved for a direction of a verdict on the ground that the defense had failed to establish its defense, and that the plantiff had proven its case, which motion the trial Judge granted, and under direction of the Court the jury found a verdict for the plaintiff in the sum of $1,-382.73, which was the total amount claimed by the plaintiff, as stated during the trial. From the entry of judgment on the verdict, pursuant to due notice, the defendant has appealed to this Court. For the purpose of better understanding the questions presented to this Court, we quote herewith the pleadings in the case which are pertinent:

## "COMPLAINT

"Plaintiff, complaining of the defendant, alleges:

"1. (Incorporation of the plaintiff.)

"2. (Incorporation of the defendant.)

"3. That on or about the 29th day of March, 1929, J. F. Fitzharris, trading as Florence Plumbing & Heating Company, as principal, and the defendant, Union Indemnity Company, as surety, as this plaintiff is informed and believes, made and delivered their bond, and thereby bound themselves in the penal sum of One Thousand Eight Hundred Seventy ($1,870.00) Dollars to H. L. Buck and to all persons who should furnish materials to be used in the residence hereafter mentioned and referred to, and the condition of said bond was that if the principal should faithfully perform the contract hereinafter referred to on his part and satisfy all claims and demands incurred for the same, and should pay all persons having contracts directly with said principal for labor and materials, then said bond and obligation should be null and void, otherwise should be of full force and effect.

"4. That the contract hereinabove mentioned and referred to, as this plaintiff is informed and believes, was entered into by and between J. F. Fitzharris, trading as Florence Plumbing & Heating Company, and H. L. Buck, of Conway, S.

C., on or about the 19th day of November, 1928, for the plumbing and heating in a residence then about to be erected at Conway, S. C., for the said H. L. Buck, and has since been erected, and in and by said contract it was provided that the said J. F. Fitzharris, trading as aforesaid, should provide labor and materials and perform all work as shown on the drawings and described in the specifications prepared by the architect, and needed for the installation of the plumbing and heating in said building, for which he should be paid the sum of Four Thousand One Hundred Fifty-one and 77/100 ($4,151.77) Dollars, and the said contract expressly provided that the said J. F. Fitzharris, trading as aforesaid, should give bond with good and sufficient surety, conditioned for the faithful performance of said contract and for the payment of all labor and materials; and the award by the said H. L. Buck of said plumbing and heating contract to the said J. F. Fitzharris, trading as aforesaid, was upon the condition that he should enter into such a contract and give such a bond; and the bond, more particularly set forth in the preceding paragraph, was given pursuant to and in compliance with the terms of said award and contract.

"5. That between the 15th day of November, 1928, and the 6th day of August, 1929, both dates inclusive, this plaintiff sold and delivered to J. F. Fitzharris, trading as aforesaid, the principal on said bond, at his request, building material of the value of One Thousand Four Hundred Thirty-six and 58/100 ($1,436.58) Dollars, as will more fully appear by the itemized statement of account hereto attached and made a part of this complaint under contracts made directly with the principal on said bond to be used in said residence, and, as this plaintiff is informed and believes, all of materials shown on said itemized statement have been used in said residence; that the materials shown on said itemized statement were sold on terms whereby the purchases during any calendar month should become due and payable on the 10th day of the following month; that the materials shown

on said itemized statement are within the scope and purview of said bond and the amount due to this plaintiff, as shown by said statement, is protected by the said bond.

"6. That this plaintiff has not been paid for the materials shown on said itemized statement of account, although said indebtedness is past due and demand for payment has been made; and the condition of said bond has been broken.

"7. That this plaintiff is entitled to recover interest on the several items shown on the said account from the date they became due, respectively, as above set forth, at the rate of seven (7%) per cent. per annum.

"Wherefore, plaintiff demands judgment of the defendant for the sum of One Thousand Four Hundred Thirty-six and 58/100 ($1,436.58) Dollars, with interest at the rate of seven (7%) per cent per annum, as set forth above and for the cost of this action."

## "Answer

"After setting up a general denial, the defendant alleged that between the dates of November 15, 1928, and August 15, 1929, the plaintiffs received from J. F. Fitzharris, trading as Florence Plumbing & Heating Company, sums of money in excess of Fifteen Hundred ($1,500.00) Dollars, which said sums of money were received by J. F. Fitzharris from H. L. Buck on the contract and job which it is alleged that the defendant was surety on; that the defendant is informed and believes that during the time which plaintiff was furnishing material on the H. L. Buck job, and subsequent thereto, it received from money received by J. F. Fitzharris from H. L. Buck, in payment upon the Buck contract, a total sum in excess of the amount of the material furnished and sold to J. F. Fitzharris for the Buck job, and that by reason of the fact that the plaintiff received of the Buck money a total sum in excess of the amount of the material furnished for the Buck job, and that the defendant is discharged from any and all liability to the plaintiff under the terms of the

alleged bond set out in the complaint, and prays that the complaint be dismissed."

On the trial of the case it seems to have been conceded that the bond in question was duly executed. Further, it conclusively appears from the evidence that Mr. Buck paid to Fitzharris the full amount he obligated to pay for the work and installation of the material in question. At the trial the contest centered around the question as to whether or not Fitzharris had paid the plaintiff for this material, and from what source the money came. His Honor, the trial Judge, it seems, according to the record before us, entertained the view that before the defendant could be credited with any payment on the obligation in question it would have to be established that the payment claimed was the exact money Fitzharris received on the Buck contract. By way of illustration, we quote the following questions propounded by his Honor to one of defendant's witnesses, bookkeeper for Fitzharris, to wit:

"Q. (The Court): Do you know of your own knowledge that the exact $1,000.00 came out of the Buck money, that it paid a check for these people, the exact $1,000.00 came out of the $1,000.00 and something which you deposited which had been paid by Mr. Buck, and if so, how do you know that? You don't know that of your own knowledge; all that you know is that you made a deposit at that time? A. Yes, sir.

"Q. With the expectation that this other check would come in? A. It would offset that check that we gave to the Southern States Supply Company.

"Q. But you don't know whether the amount put in was the one that offset some other check that may have come in and got ahead of it, and came out of that amount. In other words, you were running a continuous account at the bank? A. Yes, sir; we did.

"Q. I am trying to get at how you know of your own knowledge that any certain amount put in the bank could

meet any certain check that comes in at another time? How do you know it of your own knowledge; you were receiving money each day and paying out money each day, or nearly every day in the year? A. Yes, sir."

The defendant offered and introduced testimony tending to show that Fitzharris made payment to the plaintiff for the material in question; that payment was made by check but paid, according to defendant's contention, out of funds received on the Buck contract. Counsel for the defense offered as witness on this line Mr. Fitzharris, his bookkeeper, Miss Davis, part of whose testimony we quoted above, and also an employee of the bank on which the check was drawn, and in which Fitzharris kept his account, and also introduced the ledger sheets of the bank which showed Fitzharris' bank account. In this bank were deposited not only the funds collected by Fitzharris on account of the Buck contract, but also funds which he collected from other parties with whom he had contracts. Miss Davis, bookkeeper for Fitzharris, in the course of her testimony, testified to the amount collected on the Buck contract and deposited in said account, and also the amounts paid to the plaintiff out of said account from time to time. At least, testimony offered tended to prove such state of facts. Fitzharris purchased from the plaintiff material to be used in connection with contracts other than the Buck contract and, it seems, ran a general account with the plaintiff covering all goods purchased from time to time. It also appears that when remittances were made to the plaintiff by Fitzharris no instructions were given as to the application for same, but there seems to be no question that the checks in question were paid by the bank on which they were drawn, and that the plaintiff received the money therefor. Furthermore, while the transaction is not made absolutely clear by the testimony, one reasonable inference to be drawn from the testimony is that a sufficient amount of the money collected by Fitzharris on the Buck contract was transmitted by check

to the plaintiff to pay for a part, if not all, of the material furnished by the plaintiff on the Buck contract, and whatever amount of money the plaintiff received from this source, in our opinion, should be credited on the surety bond, so as to relieve the defendant to that extent. Section 173, Criminal Code 1922. This was the contention of the defendant in the lower Court. The following paragraph from the bond in question shows the condition of the obligation:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The pertinent question involved, which arises under the above-quoted provision of the bond, is payment by Fitzharris to the plaintiff for the material furnished by the plaintiff on the Buck contract; it matters not from what source the money was procured, whether from the Buck contract or from some other lawful source; and, further, if the plaintiff secured money from Fitzharris, transmitted by whatever means, without instruction how or on what particular account to apply it, but it is later ascertained that it was paid out of funds received on the Buck contract, so far as the defendant is concerned, it should be credited on that account. It appears from the testimony introduced at the trial on the part of the plaintiff that the plaintiff made no effort to keep a separate account against Fitzharris for the material furnished on the Buck contract, but kept but one account against Fitzharris for all materials sold him, regardless of which contract the material was fur-

nished for, and it clearly appears that the plaintiff furnished to Fitzharris material for several other contracts about the same time he furnished the material for the Buck contract, and which was all charged against Fitzharris in the same account. At least, this is a reasonable inference to be drawn from the testimony.

All of this testimony on the part of the defendant the ■ trial Judge struck out and granted the plaintiff's motion for direction of a verdict. In our opinion, this was error. According to our view, the testimony raised an issue as to payment, which the jury should have been allowed to pass on.

It is unnecessary to consider the other questions raised by the appellant.

It is the judgment of this Court that the judgment of the County Court of Richland County be, and is hereby, reversed, and the case remanded for a new trial.

MR. CHIEF JUSTICE BLEASE, and MR. JUSTICE STABLER concur.

MESSRS. JUSTICES COTHRAN and BONHAM concur in result.

MR. JUSTICE COTHRAN (concurring in result) : This is an appeal from a judgment entered upon a verdict directed by his Honor, Judge Whaley, of the County Court of Richland County, against the defendant, surety upon a building contract, for $1,382.73.

It appears that on November 19, 1928, J. F. Fitzharris, hereinafter referred to as the contractor, and H. L. Buck, hereinafter referred to as the owner, entered into a written contract, by which the contractor undertook to install the plumbing and a heating system in a residence then about to be erected for the owner in Conway, at the price of $3,-743.64, increased by additions to $4,156.40.

On March 29, 1929, the contractor and the defendant, surety company, entered into a bond to the owner, in the sum of $1,870.00, the condition of which was as follows:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The complaint alleges that between November 15, 1928, and August 6, 1929, the plaintiff sold and delivered to the contractor material of the value of $1,436.58, under contracts made directly with the contractor, which was used by him in the residence, and for which the plantiff has not been paid.

The defendant, in its answer, alleges that the plaintiff has received from the contractor more than sufficient funds, out of payments made by the owner to the contractor upon the contract in question, to fully satisfy the claim declared upon, and denies any liability upon the bond.

The case was tried before his Honor, Judge Whaley, and a jury; he directed a verdict in favor of the plaintiff for $1,382.73, the amount shown upon the statement introduced by the plaintiff upon the trial, and from the judgment entered thereon the defendant has appealed.

It appears that the plaintiff was furnishing to the contractor material for several other jobs, and that no account was kept by it for them separately; all invoices were charged to the contractor upon a general account covering all of the jobs, and that when payments were made by the contractor they were credited thereupon, the plaintiff being uninformed of the sources from which the payments were obtained by the contractor.

The total amount due by the contractor to the plaintiff upon all of the jobs up to March 29, 1929, was $8,760.19, upon which the plaintiff received from the contractor on April 2, 1929, $1,000.00, leaving unpaid, $7,760.19; that this balance was taken up by trade acceptances payable in the succeeding months upon various dates, and that all of them have been paid by the contractor except the last, for $2,000.00. The trade acceptances, according to the plaintiff's testimony, covered only the amount due by the contractor on March 29, 1929, less $1,000.00 paid on April 2d; the invoices for material supplied to the contractor for the Buck job, from November, 1928, to February, 1929, amounting to $316.30, were included in the trade acceptances, which left the invoices from April 20th to August 6th, amounting to $1,169.93, less a credit of $103.50, $1,066.43, unprovided for by trade acceptances.

Between April and August the contractor made payments to the plaintiff, which were applied to the trade acceptances leaving, as stated, $2,000.00 unpaid. As the invoices between November, 1928, and February, 1929, amounting to $316.30 were included in the trade acceptances, they should be regarded as paid by the payments which were made upon them.

In the complaint, it is alleged that the amount due to the plaintiff was $1,436.58; upon the trial a statement was introduced by the plaintiff showing the balance due to be $1,-382.73, which included eight invoices between November 15, 1928, and February 11, 1929 (inclusive), amounting to $316.30; on October 22, 1929, a statement was transmitted to Mr. Buck, of Fitzharris' account with the plaintiff, showing a balance of $1,009.72; in this last statement, the eight invoices above referred to do not appear, as also four invoices aggregating $41.71; a reasonable inference would be that these 12 invoices aggregating ($316.30 plus $41.71) $358.01 had been paid.

It appears also that on October 2, 1929, three days before the contractor was adjudicated a bankrupt (on October 5th),

counsel for the plaintiff presented to the owner a statement claiming the balance due by the contractor upon material supplied for the house, to be $163.16, a statement evidently based upon information obtained from the plaintiff, and which meant, of course, that the plaintiff had applied payments made by the contractor upon the material supplied for the owner's house; at least, that was an inference which the jury might have been justified in drawing. On October 22d, after the adjudication of bankruptcy, the counsel wrote the owner wishing to amend the notice given on October 2d, "by changing the amount from $163.16, to $1,113.22."

It was a fair inference from this that the plaintiff was endeavoring to shift the credits which it had given to the contractor on account of the Buck enterprise to other accounts, for the payment of which it had no surety bonds.

As between the debtor and the creditor, the rule for the application of payments is thus expressed in *U. S. v. Kirkpatrick,* 9 Wheat., 720, 737, 6 L. Ed., 199:

"The debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according with its own notions of justice."

It is not a conceded fact by any means that the plaintiff, in the first instance, without having previously applied them otherwise, applied the payments made by the contractor, as it now claims, to the trade acceptances. It is true that the representative of the plaintiff so testified, but the jury was not bound to accept his testimony as true, particularly in view of the rendition of a statement as late as October 2d showing the balance due by the contractor on the Buck job as $163.16. That was an issue of fact in the case; it was error, therefore, to assume the resolution of it in favor of the plaintiff's contention.

It may have been a controlling issue in the case whether the plaintiff had notice of the source of the payments made by the contractor before he should be required to waive the

privilege of applying them to other claims not secured by a surety bond. Its representative testified to the absence of such notice; circumstances may have induced the jury to reject this testimony; it was an issue in the case, and it was error to assume that the plaintiff's contention was true.

The authorities are in conflict upon the question whether notice must be brought home to the creditor of the source of the payments before he may be required to waive his right to apply them as his interest may suggest. See note, 21 A. L. R., 704; *Crane v. Pacific Co.,* 36 Wash., 95, 78 P., 460; *Merchants' Ins. Co. v. Herber,* 68 Minn., 420, 71 N. W., 624; *Columbia Digger Co. v. Sparks* (C. C. A.), 227 F., 780.

But aside from the question which of these views this Court may adopt, a question which at this time it does not appear necessary to be decided, a controlling consideration, I think, is presented in this aspect of the case:

Under Section 173 of the Criminal Code of 1922, the plaintiff as a materialman had a lien upon every dollar paid by Buck to the contractor upon the job for which the plaintiff had supplied material, regardless of whether or not the plaintiff had notice of the source. It had no right, when that money was paid to it, without inquiry as to its source, to release such lien by paying it out upon claims not protected by a surety bond to the prejudice of the surety company. There is evidence tending to show that there was a studied effort of the plaintiff, after the payments had been made and after the contractor had gone into bankruptcy, to shift the payments to claims not protected, and hold the surety company for all that was possible.

The plaintiff, while not a party to the contract between the contractor and the owner, nor to the bond, was nevertheless a beneficiary of the bond, and unquestionably had the right to enforce the bond for his protection. He is assumed to have known under the law that he had a lien upon all money paid by the owner to the contractor. He must be as-

sumed to have known that the surety had the right to rely upon that provision for his protection. It strikes me as the limit of injustice to uphold him in his act of deliberately annihilating the equity of the surety company by converting the company practically into an insurer of its claims against other contractors.

MR. JUSTICE BONHAM concurs.