No. 21,651.

KETHI ROBAR OROZEM, *Appellee,* v. C. A. MCNEILL, *Appellant.*

SYLLABUS BY THE COURT.

ACTION—*"Relief on the Ground of Fraud"*—*Statute of Limitations.* Assuming that one who has been defrauded of money has the privilege of maintaining an action against the wrongdoer upon an implied contract to restore it, arising out of the fact of the fraud, recovery being dependent upon proof thereof, such a proceeding, unless begun within two years of the discovery of the fraud, is barred by the statute requiring "actions for relief on the ground of fraud" to be brought within that period, notwithstanding that the limitation fixed for an action upon a contract not in writing, express or implied, is three years.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed July 6, 1918. Reversed.

*E. L. Burton,* of Parsons, *C. S. Denison,* and *John L. Kirkpatrick,* both of Pittsburg, for the appellant.

*S. L. Walker,* of Columbus, for the appellee.

The opinion of the court was delivered by

MASON, J.: Kethi Robar Orozem brought an action against C. A. McNeill, charging him with having retained too large a portion of a collection made for her through him. A demurrer to her petition, on the ground that the action was one for relief on the ground of fraud, and was barred by the two-year statute of limitations, was overruled. The defendant appeals.

The petition set out substantially these facts: The plaintiff had a claim against a railroad company on account of the death of her husband. She made a contract with a lawyer to undertake the collection thereof for a contingent fee of 40 percent. The lawyer arranged with the law firm of which McNeill was a member to assist in the prosecution of an action against the company, for one-half of the fee, after the deduction of expenses. Such an action was brought in a Missouri court. A verdict for $7,000 was returned for the plaintiff, on which judgment was rendered. While a motion for a new trial was pending McNeill negotiated a compromise with the company

by which the claim was to be satisfied by the payment of $6,000. He then induced the plaintiff to give him a power of attorney to effect a settlement, and to agree to an adjustment by which she should receive $2,650. To accomplish this he concealed from her the fact that the agreement with the company on a $6,000 basis had already been made, and represented to her that unless she consented to accept the $2,650 as her share of the claim an appeal would be taken and a new trial had, and that delay and a net loss to her would result. The company paid McNeill $6,000, of which he turned over to the plaintiff $2,650, retaining the rest. This action is brought for $950, on the theory that she was entitled to 60 percent of the amount collected, and that her consent to the acceptance of $2,650 in full of her claim was obtained by the false representations already set out.

The money was paid and divided in November, 1913. No allegation is made that the fraud alleged to have been practiced upon the plaintiff was not at once discovered. This action was begun in January, 1916. The defendant maintains that it is one for relief on the ground of fraud, and is barred because not brought within two years, no tolling of the statute through a delay in the discovery of the real facts being alleged. (*Young v. Wittenhall,* 15 Kan. 579, 580.) The plaintiff contends that it is her privilege to sue upon the implied contract arising from the defendant's duty to pay her the amount claimed, and that such an action may be brought at any time within three years, since the statute fixes that period as the limitation for "an action upon contract, not in writing, express or implied." (Gen. Stat. 1915, § 6907, subdiv. 2.)

This court has held that "whenever one person commits a wrong or tort against the estate of another, with the intention of benefiting his own estate, the law will, at the election of the party injured, imply or presume a contract on the part of the wrongdoer to pay the party injured the full value of all benefits resulting to the wrongdoer." (*Fanson v. Linsley,* 20 Kan. 235, syl. ¶ 1.) And such is the general rule (Note, Ann. Cas. 1913 D, 230), which extends to cases where one has been fraudulently induced to part with his money. (Same note, p. 237; Note, 134 Am. St. Rep. 194, 195; 15 A. & E. Encycl. of L. 1107.) The courts do not agree in their statements of the

precise grounds of the rule, or of its scope.  It is not merely
an expression of the thought that if a contract exists the
ordinary remedy for its violation is not cut off because the act
complained of also amounts to a tort or fraud.  Cases illus-
trating that phase of the matter are collected and discussed in
the note first referred to, at pages 228, 229.  In such cases the
plaintiff is not required to prove the tort in order to obtain a
judgment, and the defendant is not allowed to prove it in order
to defeat it; the contract actually exists by the agreement of
the parties, and does not result from a legal fiction.  But in the
broader form in which the rule is stated in the Kansas decision
quoted from, it is based, at least in part, upon the principle
that the fact that property has been wrongfully obtained from
another creates an obligation to return it, which may be
treated as the result of an implied promise.  Therefore, to
show the existence of the fictitious contract or quasi contract
sued upon, the plaintiff not only may, but (where this phase.
of the rule is relied on) must, allege and prove the tort or
fraud.  It is often said that the person aggrieved may waive
the tort and sue upon the implied contract, but this expression
is open to some misapprehension.  What he waives is the right
to seek relief through a procedure peculiar to actions founded
on tort.  Having the privilege of pursuing either remedy, he
elects to declare upon an implied contract instead of upon the
tort.  He does not waive the wrong or fraud that has been
practiced upon him by which the defendant has obtained his
money or property, but he alleges in effect that because it was
so unlawfully obtained from him a promise to restore it is im-
plied.

"The tort is, however, waived only in the sense that a party having a
right to sue in tort or assumpsit will not, after he has elected to sue in
assumpsit, be allowed to sue in tort.  By such an election that which was
before the election tortious does not cease to be so.  In fact, when the
assumpsit is brought, it is only by showing that the defendant did a
tortious act that the plaintiff is able to recover.  There being no contract
between the parties, unless the defendant is guilty of some wrong the
plaintiff can establish no cause of action against him."  (Keener on
Quasi-contracts, 159.)

According to this view, the circumstance that the plaintiff
is required to prove the fraud or other tort in order to recover

does not prevent the maintenance of his action as one upon an implied contract.

In a number of cases it has been held that the fact that a right of action upon a tort has been barred by the statute of limitations does not ordinarily prevent a suit being maintained upon the resulting implied contract, where the situation is such as to make that remedy otherwise available. (Note, Ann. Cas. 1913 D, 238.) This doctrine has been criticized on the ground that "there is no conceivable reason why, in the case of a particular wrong, one *form* of action should be available after another is barred; the purpose of the statute is that upon the expiration of the specified period *no* action shall be brought for the redress of the wrong." (Woodward, The Law of Quasi Contracts, § 294.) In jurisdictions where the common-law forms of action have been abolished the nature rather than the form of an action is regarded as determining what statute of limitations is applicable. (Note, 12 Ann. Cas. 175.) Adherence to that view is indicated by a decision of this court, the scope of which is shown by this language of the opinion:

"It may be objected that this was not an action for relief on the ground of fraud; that it was simply a proceeding against a garnishee; but legal proceedings, like things, are what they are in essence and not what they may be named. The essential thing in this proceeding was that the plaintiff desired to be relieved from the legal consequences of the execution of these conveyances, and for this purpose he charged that they were fraudulently made. That he charged this by his evidence, rather than by a formal petition, could make no difference in the nature and essence of his action, nor limit the right of the party against whom the relief was sought to urge the bar of the statute of limitations." (*Nelson v. Stull,* 65 Kan. 585, 591, 68 Pac. 617, 70 Pac. 590.)

In the present case, according to the allegations of the petition, an adjustment was had between the plaintiff and the defendant by which she agreed to accept $2,650 in full of her claim. She cannot recover in any form of action unless she, in effect, succeeds in having that settlement set aside on the ground of fraud—to accomplish that purpose is essentially the object of her proceeding. The statute declares that "an action for relief on the ground of fraud" must be brought within two years from the discovery thereof. (Gen. Stat. 1915, § 6907, subdiv. 3.) By its terms this provision might apply to an action nominally based upon an implied contract, as well as to

one avowedly founded upon a tort. Inasmuch as· the fraud must be shown in order to warrant a recovery, the action is literally one "for relief on the ground of fraud"—the contract feature of the case is a mere fiction growing out of the fraud. This provision of the statute is fairly to be regarded as entitled to preference over the one relating to the time within which actions upon contracts must be brought, because of being more specific in its nature. Another reason exists for giving it the greater effect. In enacting this law the legislature had before it the question as to how long, as a matter of public policy, a person who has been defrauded, and who knows of the fraud, ought to be allowed to wait before invoking a judicial examination of the facts. Consideration must have been given to the argument that the peculiar difficulty in meeting a charge of fraud—in establishing the good faith of a transaction which upon its face is conclusive of the rights of the parties—may be greatly increased by delay, and that the accused ought in fairness to be called to account within a reasonable time—short enough so that his means of showing the true facts would not be likely to have been impaired. Inasmuch as the lawmaking body, presumably upon this reasoning, has decided that a charge of fraud as a basis for relief to the injured person should not be entertained unless made within two years of its discovery, it may well be thought that for the courts to permit substantially the same result to be achieved by bringing an action upon an implied contract to restore the fruits of the fraud would be to allow the legislative purpose to be defeated by indirection.

The court concludes that whatever may be the rule as to other torts, an action upon an implied promise, resulting from the fraudulent obtaining of the plaintiff's money, must be brought within two years after the discovery of the fraud.

The judgment is therefore reversed and the cause remanded with directions to sustain the demurrer to the petition.

MARSHALL, J., dissents.