No. 29,702.

MARGARET A. HOMEWOOD, *Appellee*, v. CHARLES H. EGGERS, *Appellant*.

(295 Pac. 681.)

Opinion filed February 7, 1931.

*Thomas E. Wagstaff*, of Independence, and *W. F. Challis*, of Wamego, for the appellant.

*Oscar Raines, A. E. Crane, B. F. Messick* and *A. Harry Crane*, all of Topeka, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to set aside a deed on the ground of undue influence and want of consideration. The answer, in addition to making a general and specific denial, alleges estoppel and ratification. The trial court made extended findings of fact and conclusions of law and rendered judgment for plaintiff canceling the deed, from which judgment the defendant appeals, assigning many errors, one of which is the failure of the evidence to support the findings.

The court found that E. B. Homewood, the husband of the plaintiff, died September 15, 1928, leaving a will in which he devised and bequeathed all of his property to his wife and nominated her as executrix of the estate, and that the will contained the following provision:

"I direct that as soon after my decease as practicable, my executrix, hereinafter named, pay all of my just debts, including those of my last sickness and burial."

The court further found that the real estate he owned was eighty acres in Pottawatomie county, on which there was a mortgage of $2,500 and on which tract he and his family, consisting of his wife and two minor children, resided at the time of his death; that on the morning after the funeral, while the family was at breakfast, the defendant came to the home of the widow and family, bringing with him Mr. Funnell, a local banker, and made inquiry for the papers of the deceased in connection with the Eggers estate, and defendant told the wife he believed her husband had committed suicide and left a shortage in his account in that estate of about five thousand dollars; that he told the widow she should go to her husband's box in the bank, and no doubt she would find a will which would tell her what to do; that she went and found the will and defendant was there and suggested she should have another to look after the settlement of the estate, and recommended the banker Funnell, and urged that she go at once to the county seat and have the will probated; that she did as he suggested and waived her right to administer on the estate, and Mr. Funnell, who was there with the defendant, was appointed administrator; that the defendant told the widow the morning after the funeral that a deed to the farm would pay the shortage of her husband and that she should make a deed to him; that he told the son and other members of the family that the

best thing to do was to make a deed to him and keep down any scandal or talk about suicide, which statements were communicated to plaintiff, and defendant told her he could sell the farm for her husband's debt under the law and by the terms of the will; that she was ignorant of her rights under the law and under the will, and believing the defendant and relying on him she executed the deed to him while she was grief-stricken and nervous; that the widow was of limited business experience which was known to the defendant; that she was ignorant of her rights under the will and as to not being liable for the debts of her husband, and as to the homestead not being liable for such debts; that defendant urged her many times not to employ a lawyer, as none was needed; that the will was probated the next day after the funeral and the deed was executed about three days later; that she received no consideration whatever for the deed. That later she leased the farm from the defendant for one year and paid $350 cash for it to the defendant, and when she did so she was still ignorant of her rights and did not learn of her rights nor realize the undue influence that had been exerted over her when she could not control her feelings until a few days before she commenced this action; and that the defendant paid $353.75 for taxes, interest and repairs on the place after procuring the deed.

The conclusions of law made by the trial court were as follows:

"I. That the deed in question should be set aside and canceled for the reasons found herein.

"II. That the deed was procured by means of fraud and undue influence and at a time when the plaintiff was in ignorance of her rights under the will and her rights by virtue of her homestead and that she received no consideration for the deed from the defendant.

"III. That plaintiff should pay to the defendant the sum of three and 75/100 dollars, being the difference between the amount of money received by him for the land and the amount paid out.

"IV. That the plaintiff have and recover her costs from the defendant."

It is first insisted there was no evidence to support the finding that there was no consideration for the deed, and our attention is directed in this connection to the fact of the defendant, by the terms of the deed, assuming and agreeing to pay the $2,500 mortgage on the farm, where the plaintiff as well as her husband were makers of the note secured by the mortgage, thus relieving her of that liability, and, further, that the estate of her husband in which she was the sole beneficiary under the will was relieved of the

indebtedness of her deceased husband to the Eggers estate estimated as being $4,233.58. The obligation to pay the mortgage on the farm was not something that passed from the grantee to the grantor. The liability of the defendant therefor depends entirely upon the validity of the deed. With the cancellation of the deed the liability ceases. As to the extinguishment of the husband's shortage in the accounts of another estate, it was not a debt or obligation of the wife and could not be regarded as a consideration passing to her unless it would reduce her interest in her husband's estate. The court found the land deeded was the homestead of herself and minor children at the time the deed was made, and there was ample evidence to support that finding.

Appellant relies upon the evidence showing an intention to leave the farm and move to Wichita, which, of course, would defeat all homestead rights, but the court who heard the testimony did not credit that testimony and did credit that in favor of its remaining a homestead, which completely disposes of this feature of the case.

Taking under the will does not subject the homestead to the payment of the debts of the husband, although the will places full title to the homestead in the widow. Neither does the provision of the will that all his debts are to be paid as soon as practicable abrogate and set aside the homestead right of the wife and minor children of the deceased owner.

"If a husband and wife occupy a tract of land belonging to him as a homestead, she is the family of the owner within the meaning of the constitution, and his death does not deprive her of the right to continue to be so designated in order to maintain the homestead, to which she takes title and which she continues to occupy, free from forced sale under process of law for the payment of his debts." (*Cross v. Benson,* 68 Kan. 495, syl. ¶ 2, 75 Pac. 558.)

"Property occupied at the time of his death as the homestead of its owner and his children remains exempt from the claims of his creditors so long as it continues to be so occupied by any of the children, although by his will the title passed to them in unequal shares.

"Such exemption is not affected by the fact that the will contains a general clause directing the payment of his debts out of his estate." (*Hicks v. Sage,* 104 Kan. 723, syl. ¶¶ 3, 4, 180 Pac. 780.)

Appellant urges that before appellee can rescind the deed she must restore to appellant all benefits received by her and must announce her purpose to rescind within a reasonable time after the discovery of the fraud. This needs no support of authorities, but the difficulty here for the appellant is the finding that she did not dis-

cover the fraud until a few days before the action was commenced. True, the record does show that she said if she had had a week longer to think on it she would not have done it, but that does not indicate she could have discovered the fraud within a week. It naturally implies she would have been more nearly herself and better able to exercise a judgment than the day after the funeral or four days after the funeral.

"A person defrauded in a land trade has the right to rescind on complete discovery of the fraud, although he has been in possession of the land received by him, and although he did not attempt rescission when he first received information, after the trade was made, that some false statements had been made to him by the other parties to the transaction." (*Steele et al. v. State Bank et al.*, 116 Kan. 510, syl. ¶ 2, 227 Pac. 352.)

Appellant contends that the doctrine of estoppel applies in this case against the appellee attempting to set aside the deed she gave the defendant, for the reason she has recognized and ratified the title in the appellant by renting the property from him and paying him a cash rent for one year. This is generally a conclusive argument against a possessory action, but not where the title itself is involved, as was said in the case of *Beeler v. Elwell*, 92 Kan. 586, 141 Pac. 551:

"The estoppel of a tenant to dispute his landlord's title ordinarily extends to those matters only which affect relations growing out of the tenancy, and an action to quiet title may be prosecuted by the landlord and defended by the tenant having for its purpose the adjudication of claims respecting the ultimate title." (Syl. ¶ 1.)

Neither will ratification prevent an action of this kind until the wrong has been discovered and the party has acted with full knowledge of the situation.

"Ratification implies knowledge, and a party cannot be adjudged to have ratified an act of which he has no knowledge, actual or constructive." (*National Bank v. Drake*, 29 Kan. 311, syl. ¶ 4.)

Appellant insists there was no evidence to show undue influence and quotes the evidence of the appellant and cites the fact that the appellee had her son David with her when the will was probated and the deed executed and he was thirty years of age. These matters were and are proper for consideration in determining this question, but, on the other hand, there is the very disturbing conversation by the appellant at the home of the appellee the next morning after the funeral; the bringing of a banker with him, whom he recommended to settle the estate instead of plaintiff, as provided

in the will, and urging her to go to the bank to get the will and have it probated the same day; the recommendation that she do not employ a lawyer; the statement that he could collect the shortage from the estate; that a deed should be given to him, and the fact that she had confidence in him and in his advice.

"In all such cases the proof must be substantial so that the judges of fact, having a proper understanding of what undue influence is, may perceive by whom and in what manner it has been exercised, and what effect it has had upon the will." (*Ginter v. Ginter,* 79 Kan. 721, syl. ¶ 4, 101 Pac. 634.)

The test of undue influence is whether the party exercises her own free agency and acts voluntarily by the use of her own reason and judgment. (*Warwick v. Zimmerman,* 126 Kan. 619, 270 Pac. 612.)

We have no difficulty in finding sufficient evidence in the record to support the findings of the trial court on each and all the subjects urged by the appellant. We concur in the conclusions reached and find no error in the proceedings.

The judgment is affirmed.