No. 36,179

H. H. EVERLY, *Appellee,* v. EMMETT BYRD, *Appellant.*

(152 P. 2d 831)

 Opinion filed November 4, 1944. 

*Richard A. Hickey,* of Liberal, argued the cause, and *G. W. Sawyer,* of Liberal, and *Collis R. Harner,* of Dodge City, were on the briefs for the appellant.

*A. E. Kramer,* of Hugoton, argued the cause, and *J. S. Brollier,* of Hugoton, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action to quiet title. The trial court

made findings of fact and rendered judgment for the plaintiff. The defendant appeals.

The plaintiff's petition contains averments usually to be found in a pleading filed for the purpose of initiating an ordinary quiet-title proceeding. It alleges he was the legal and equitable owner of and in the actual, peaceable and exclusive possession of a one-acre tract of land (describing it) located in Stevens county, Kansas, and that the defendant claimed an interest therein, the nature of which was unknown but was junior and inferior to plaintiff's title and cast a cloud thereon.

Defendant's amended answer in addition to a general denial seeks affirmative relief and specifically alleges the deed under which plaintiff claimed to have acquired title to the property was void and of no effect. It alleges defendant had been in the actual, open, notorious, exclusive and adverse possession of such property for more than fifteen years, that he was the legal owner thereof and his title should be quieted as against plaintiff. It further alleges that prior to filing of the petition the plaintiff was and had been occupying one-third of such property as defendant's tenant. The effect of other specific allegations of defense can be summarized as follows: The deed under which plaintiff claimed to have acquired title was based on fraud and illegal transactions in the procurement of a prior conveyance to the grantor of plaintiff and by reason of such facts plaintiff's deed was therefore null and void.

The reply denies generally the allegations of the amended answer and in addition alleges the defendant by his acts, deeds, statements and conduct, was estopped from asserting any title to the property or any of the defenses set forth in such amended answer and was barred by the statute of limitations from asserting any of the defenses attempted to be set up by him therein.

On the issues thus presented by the pleadings the case was tried by the court, which, at defendant's request, made extended and complete findings of fact. They tell the story as disclosed by the evidence. Since it is not contended they are unsupported by the evidence, that they are incomplete or that further findings of fact should have been made, and, since an examination of the record discloses they were all supported by competent testimony they must be regarded by us as the facts of the case. They read:

"1. This action was commenced by the filing of petition and issuance of summons on March 6, 1943. Amended Answer and Cross Petition was filed on the 10th day of June, 1943.

"2. On the 10th day of July, 1929, the defendant J. E. Byrd, also known as Emmett Byrd, executed and delivered to the Citizens State Bank of Hugoton, Kansas, his certain note in writing for $2500.00, due one year after date with interest at 10% per annum from date until paid. Said note was offered in evidence by defendant as his Exhibit 1A. And as security for said note on said date said defendant made, executed and delivered to said Bank his certain real estate mortgage covering the following described property, in Stevens County, Kansas, to-wit: 1 Acre of land in the Southwest Quarter of Section 9, Township 33, Range 37; a tract commencing at a point where the east line (etc.) and other property; that said mortgage was duly filed for record in the office of the Register of Deeds of Stevens County, Kansas, on the 20th day of December, 1929, and there placed of record in Book C-2, at page 109, with the registration tax fully paid.

"3. On the 28th day of August, 1930, defendant was incarcerated in the Kansas State Penitentiary at Lansing, Kansas, and there remained until the 27th day of July, 1931.

"4. Before his incarceration in the Penitentiary, said defendant signed in blank one promissory note for the purpose of providing for the renewal of the note above described; that on September 29, 1930, said renewal note was completed, bearing that date, due December 29, 1930.

"5. That on or about the 6th day of February, 1931, the defendant executed and delivered to R. M. Crawford, a vice-president and director of the Citizens State Bank of Hugoton, Kansas, his warranty deed covering the property involved in this action, together with other property, which deed was filed for record in the office of the Register of Deeds of Stevens County, Kansas, on the 10th day of February, 1931, and recorded in Volume A2 at page 612.

"6. Thereafter, and on the 24th day of February, 1931, R. M. Crawford made, executed and delivered to the Citizens State Bank of Hugoton, Kansas, his quitclaim deed covering the property involved in this action, and other property. Said deed purporting to convey the same property covered by the deed and mortgage hereinbefore described. The mortgage registration fee thereon has not been paid. (Note—This quit claim deed was filed for record January 18, 1943.)

"7. That on or about the 18th day of January, 1943, the said mortgage for $2,500.00, described in Finding No. 2, was released of record in the office of the Register of Deeds of Stevens County, Kansas, by the Citizens State Bank of Hugoton, Kansas.

"8. That on or about the 19th day of January, 1943, the said Citizens State Bank of Hugoton, Kansas, made, executed and delivered its certain warranty deed to the property involved in this action to the plaintiff herein.

"9. The Citizens State Bank of Hugoton, Kansas, has at no time held adverse possession of the real property involved herein.

"10. On or about November 1, 1942, the plaintiff herein entered into possession of approximately the . . . half of the property involved herein, by virtue of an oral lease from defendant Byrd, at a monthly rental of $10.00 per month, payable in advance. Said rental was paid under said lease by plaintiff to defendant up to and including the month of January, 1943. That plaintiff procured possession wholly by virtue of such lease.

"11. The deed executed by defendant Byrd to R. M. Crawford was executed for security only, and was not intended or treated by either party as a muniment of title. The Citizens State Bank of Hugoton, Kansas, has at all times since the execution thereof, held in its possession, unsatisfied, the two notes described in Findings No. 2 and 4.

"12. That said notes evidence an indebtedness of $2,500.00, and interest, which has not been paid.

"13. The Citizens State Bank of Hugoton, Kansas, paid some taxes on said property in the year 1931, but has paid no taxes since that date. All taxes since that date have been paid by the defendant Byrd.

"14. Sometime in the early part of January, 1943, the defendant agreed to sell to plaintiff the property described in Finding No. 2, hereof, for the sum of $1,500.00, and plaintiff orally agreed to purchase the same.

"15. They went together to the office of the Register of Deeds of Stevens County, Kansas, to determine the status of the title, and there met one R. L. Smith, who looked up the records for them and advised them that the title stood in the name of R. M. Crawford, and that the same was encumbered by a mortgage executed by the defendant Byrd to the Citizens State Bank of Hugoton, Kansas, for $2,500.00. Defendant Byrd stated to plaintiff that said property had gone to tax sale and that he held the same by virtue of a tax title.

"16. Defendant Byrd did not have a tax title to said property, but at no time stated to plaintiff any other source of title, nor did he at any time deny the validity of the conveyance to Crawford as a muniment of title.

"17. Some time after the first of January, 1943, plaintiff learned that the Citizens State Bank of Hugoton, Kansas, held title to said property, and paid said bank $1,500.00 in cash for a deed thereto.

"18. The only information plaintiff had of the claims or rights of the defendant Byrd was that received from Byrd himself."

Based on the findings just quoted the trial court's conclusions of law were as follows:

"1. The plaintiff made such investigation of the rights of defendant Byrd as the law requires. Defendant gave plaintiff no information of a legal claim to said property.

"2. Plaintiff was a purchaser for value without knowledge of defects in his grantor's title, and is entitled to judgment quieting his title to the property involved herein as against the defendant, and for his costs."

Based on the findings of fact and conclusions of law the trial court rendered judgment quieting plaintiff's title. Thereupon defendant served notice of appeal.

Counsel for appellant with their customary diligence have pursued every possible avenue of defense available to their client under the circumstances in existence at the time their client brought his cause to them for their attention. Many of the contentions advanced by them are sound when considered as abstract principles of law but have no application under the factual situation presented

by the evidence and the findings of fact, which, as we have heretofore indicated must be given full weight in our consideration of the rights of the parties. Others pertain to matters of defense available to appellant in an action brought for the purpose of determining his rights and those of the bank and that corporation's immediate grantor but they are not of consequence in a quiet title proceeding where only appellant and appellee are involved. All such questions, as well as others which we deem important and conclusive have been given careful consideration and will be given attention in the course of our opinion.

It is suggested the deed from appellant to Crawford was void because executed while the former was in a penal institution under legal commitment. We do not think so. G. S. 1935, 21-134, effective at the time of the execution of the deed to which we have referred, expressly confers on convicts the right and power to make contracts in respect to their property, both real and personal, as fully and completely as if their civil rights were not suspended. Its language is plain, simple and unequivocal and must be given force and effect notwithstanding the provisions of G. S. 1935, 21-118, an earlier enactment, which provides that on sentence to confinement and hard labor in a penal institution all civil rights of the person so sentenced shall be suspended during the term for which he is committed. When construed together they simply mean that even though the civil rights of the individual referred to in both sections are suspended his contracts with respect to his property when made by him are nevertheless recognized as valid and enforceable. Our earlier decisions, of which there are several, dealing with the effect of G. S. 1935, 21-118, prior to the enactment of G. S. 1935, 21-134, are not applicable and in *Handrub v. Griffin,* 127 Kan. 732, 275 Pac. 196, relied upon by appellant, the question of the right to make contracts with respect to property under such section was not in issue or even given consideration. Perhaps in anticipation of the conclusion just announced appellant raises the question that even if valid the deed in question was void because executed in blank. The answer to that contention is found in Finding No. 5. The trial court found the deed was executed and delivered and appellant is precluded from going behind that finding.

It is next urged that because appellee was a tenant and in possession of at least a part of the real estate involved under an oral lease he was estopped, while still in possession of the premises under such

lease, from denying the title of his landlord. We have no desire to weaken the laudable rule on which appellant relies. We have announced and applied it in many of our decisions and will do so again. The difficulty is the facts found by the trial court do not justify its application here. After appellee filed his petition to quiet title appellant came in by his answer and cross petition and placed the ultimate title in issue. He thereby waived the right to rely upon estoppel and elected to determine the question of title and the right to possession. The rule announced in *Creighton v. Dorsey,* 140 Kan. 688, 38 P. 2d 40, and earlier decisions then became operative. In that case we held:

"Where the petition in an action to quiet title alleges ownership and possession by the plaintiff, and the defendant by answer and cross petition makes similar claims, and there is conflicting evidence as to such matters, the court has jurisdiction to determine the question of title and the right to possession." (Syl. ¶ 3.)

See, also, *Beeler v. Elwell,* 92 Kan. 586, 141 Pac. 551 and *Homewood v. Eggers,* 132 Kan. 256, 295 Pac. 681.

Reference to the findings of fact will disclose that when appellee attempted to buy the property, and after he and appellant had gone to the courthouse to determine the status of the property and arrange for consummation of its sale, it was found the title stood in the name of R. M. Crawford under a warranty deed from appellant which had been on record for almost twelve years. They reveal that appellant then made no denial of the deed or questioned its force and effect. All he said was that the property had gone to tax sale and that he held it by virtue of a tax title. When appellant failed to produce his tax title, appellee, who had subsequently found the bank held title to the property and under circumstances where the only information he had of the claims or rights of Byrd thereto was that of Byrd himself (see finding No. 18), then purchased it from the bank and paid that institution cash in the sum of $1,500 therefor. Under the conditions just related appellee had a right to rely on the warranty deed of record whereby appellant so far as the record disclosed had by his own action disposed of all his interest in the property. True enough, appellant could have, at any time prior to the closing of the transaction, advised appellee of the fact that his deed to Crawford was a mortgage and that he was the holder of the legal title notwithstanding the deed and thereby placed himself in a position where the defense would have been available to him. This he did not do but claimed a tax title the record failed to

show was in existence, and, in fact, did not exist. Under all the facts as disclosed by the findings it was appellant's duty to advise appellee of his contention he had not transferred title to Crawford by the warranty deed. By failing to do so he precluded himself from making that claim after appellee had purchased the property from Crawford's grantee for value without any notice or knowledge of its existence. This is true notwithstanding appellant was in possession. Whatever the rule may be elsewhere it is settled in this state that possession by the grantor after conveyance made is not notice to a purchaser from the grantee. See *Creighton v. Dorsey*, supra, and cases there cited, wherein it was held:

"Possession of real estate by the grantors in a warranty deed, in which no reservations of title or interest are made, does not impart notice to a purchaser from the grantee of secret equities existing in favor of the person occupying the land." (Syl. ¶ 1.)

See, also, Annotation 105 A. L. R. 845.

Other contentions advanced by appellant but which we have determined are of less importance than those to which we have just referred will be briefly considered. It is suggested that since the proposed contract of sale between appellant and appellee for the sale of the real estate was oral and therefore unenforceable under the statute of frauds the appellant owed no duty to the appellee to advise him regarding his claim to the title. This was not an action for specific performance and we think the fact the contract was, or was not, enforceable had nothing to do with the obligation resting on appellant to disclose what he claimed was the status of the title. Another contention is that fraud permeates the entire transaction, commencing with the date of the execution of the warranty deed to Crawford down to the moment of the transfer to appellee. This contention is not good. The court failed to find fraud existed insofar as appellee was concerned and expressly found he had no notice or knowledge of any defense appellant might have had against his own grantee. It is claimed the fact the bank obtained a quitclaim deed from Crawford and did not place it on record for many years should be given some weight in determining whether the warranty deed from the bank to the appellee transferred legal title to him. This claim also is without merit. It made no difference so far as the title is concerned whether the bank had a quitclaim deed or a warranty deed or when it was recorded. Appellee as the purchaser of the property had a right, in view of the findings of fact, to rely

upon the warranty deed, which, so far as he knew, was what it purported to be, a valid instrument conveying all of appellant's right, title and interest in and to the property. Under the circumstances, as between appellee and appellant the recitals of that deed were conclusive on the question of whether the latter had retained any interest in the land so conveyed by him. Other questions are advanced by appellant but relate only to defenses he might have made as against the bank and Crawford and since they have no bearing on the rights of the parties in this proceeding will not be discussed.

We find nothing in the record to sustain appellant's contention the judgment quieting the appellee's title was erroneous. The judgment is affirmed.