No. 39,862

HARTFORD ACCIDENT AND INDEMNITY COMPANY, *Appellee,* v. P. A.
RICHARDS, *Appellant.*

(294 P. 2d 236)

Opinion filed February 29, 1956.

*Ford Harbaugh,* of Wellington, and *Jerome Jones,* of Wichita, argued the
cause, and *A. W. Hershberger, J. B. Patterson, Richard Jones, Wm. P. Thompson* and *H. E. Jones,* all of Wichita, were with them on the briefs for the appellant.

*James R. Barr,* of Wichita, argued the cause, and *Clifford H. Pugh,* of Wichita, and *C. A. Nanfito,* of Omaha, Nebraska, were with him on the briefs for the
appellee.

The opinion of the court was delivered by

PRICE, J.: The basic question in this case is whether confinement
of a defendant in the state penitentiary for a term less than life tolls
a statute of limitation in favor of a plaintiff during the period of
such confinement. Stated another way, the question is—may a defendant be sued while so confined? ·

For reasons which will hereinafter appear, we hold that such confinement of a defendant does not toll a statute of limitation in favor
of a plaintiff—in other words, a defendant so confined may be sued.

On January 20, 1949, the Hartford Accident and Indemnity Company, plaintiff herein, issued its Bankers' Blanket Bond in the amount of $20,000 to The Corbin State Bank by which, among other things, the bank, under the fidelity insuring clause of the bond, was insured against loss through any dishonest, fraudulent or criminal act of any of its employees.

On February 9, 1951, plaintiff received written notice from the receiver of the bank that it had suffered a loss of approximately $39,000, due to embezzlement by defendant Richards, the cashier.

On March 10, 1951, defendant entered a plea of guilty to the charge of embezzlement in the district court of Sumner County and was sentenced to confinement in the state penitentiary for a term of from three to fifty years. He commenced serving the sentence on that date.

On April 23, 1951, pursuant to its liability under the bond, plaintiff paid to the receiver of the bank the sum of $20,000, and on the same date received from the receiver an assignment of the bank's claim against defendant in the sum of $18,300.71.

On August 1, 1953, defendant was released from the state penitentiary.

On March 16, 1954, plaintiff filed this action in which it seeks recovery from defendant of the embezzled funds.

After setting out the facts substantially as above related, the petition, in the first cause of action, alleges that by reason of its payment of $20,000 to the receiver of the bank plaintiff is subrogated to all of the rights of the bank, and that by reason thereof recovery is sought for the amount of such payment, together with interest.

The second cause of action seeks recovery from defendant in the amount of $18,300.71, and is based on the written assignment heretofore mentioned.

Defendant demurred to the petition on the ground that pleading fails to state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant.

This demurrer was overruled and defendant has appealed.

With respect to the first cause of action, plaintiff contends its theory is that of recovery on an implied contract; that the applicable statute of limitation is the *second* subdivision of G. S. 1949, 60-306, which provides that an action upon contract not in writing, *express* or *implied*, can be brought within three years after the cause of action shall have accrued; that this cause of action ac-

crued on April 23, 1951, that being the date it paid its full liability of $20,000 to the receiver, and that the action, having been filed on March 16, 1954, was therefore brought within the three-year period.

Defendant, on the other hand, contends that the statute of limitation applicable to the first cause of action is the *third* subdivision of the mentioned statute which provides that an action for relief on the ground of fraud can only be brought within two years after discovery of the fraud; that this cause of action therefore accrued on February 9, 1951, that being the date plaintiff was first notified of the shortage; that the statute of limitation was not tolled in plaintiff's favor while defendant was confined in the penitentiary, and that the action is long since barred.

We believe that plaintiff is in error in contending for the application of the three-year statute of limitation based on the theory of implied contract.

Under any theory, no matter what the cause of action be denominated, plaintiff insurer's rights to recover are derived from and are limited to the rights which the bank possessed against defendant wrongdoer. In other words, plaintiff is subrogated only to such rights as the bank possessed. Defendant, having embezzled the bank's funds, was liable to the bank in an action based on fraud for such wrongful conversion, and as far as recovery is concerned plaintiff stands on the same footing as did the bank. The principle involved is well stated in *Orozem v. McNeill,* 103 Kan. 429, 175 Pac. 633, 3 A. L. R. 1598, in which it was held:

"Assuming that one who has been defrauded of money has the privilege of maintaining an action against the wrongdoer upon an implied contract to restore it, arising out of the fact of the fraud, recovery being dependent upon proof thereof, such a proceeding, unless begun within two years of the discovery of the fraud, is barred by the statute requiring 'actions for relief on the ground of fraud' to be brought within that period, notwithstanding that the limitation fixed for an action upon a contract not in writing, express or implied, is three years." (Syl.)

In the opinion it was said:

"Inasmuch as the fraud must be shown in order to warrant a recovery, the action is literally one 'for relief on the ground of fraud'—the contract feature of the case is a mere fiction growing out of the fraud. This provision of the statute is fairly to be regarded as entitled to preference over the one relating to the time within which actions upon contracts must be brought, because of being more specific in its nature." (p. 433.)

This rule was followed in *Weigand v. Shepard,* 105 Kan. 405, 184 Pac. 722, where it was held:

"The gravamen of the action being fraud, the statute of limitations applicable to actions for relief on that ground governs, although the petition discloses appropriation of property for the payment of which the law implies a contract." (Syl. 2.)

We have no hesitancy in concluding that the statute of limitation applicable to the first cause of action is the two-year statute relating to an action for fraud, and it necessarily follows that it is barred unless the statute was tolled in plaintiff's favor because of defendant's confinement in the state penitentiary.

Substantially the same arguments are made with respect to plaintiff's second cause of action, and in our opinion the same reasoning applies in answer thereto. In other words, this cause of action is likewise governed by the two-year statute of limitation and is barred unless the statute was tolled in plaintiff's favor because of defendant's confinement in the state penitentiary.

This brings us, then, to the underlying question in the case.

Plaintiff vigorously contends that defendant's confinement in the state penitentiary tolled any applicable statute of limitation insofar as it is concerned. In other words, it argues that defendant could not be sued while so confined, and in this connection relies in part on G. S. 1949, 21-118, which reads:

"A sentence of confinement and hard labor for a term less than life suspends all civil rights of the person so sentenced during the term thereof, and forfeits all public offices and trusts, authority and power; and a person sentenced to such confinement for life shall thereafter be deemed civilly dead."

It also relies on what was held in a number of early cases, among them being *County of Rice v. Lawrence,* 29 Kan. 158, to the effect that the conviction, sentence and imprisonment of a defendant suspends his civil rights and also suspends his creditors' rights to bring action against him, and that no valid judgment can be rendered against him during his imprisonment without the appointment of a trustee.

We have no quarrel with the rule announced in those early decisions, but it must be borne in mind that they were decided on the basis of statutes providing for the appointment and duties of a trustee for one sentenced to confinement in the penitentiary, and that all such statutes were repealed by our legislature in 1939. A brief summary of them follows, the references being to G. S. 1935.

62-2001 provided that whenever any person was imprisoned under a sentence of imprisonment for life his personal estate, property and

effects were to be administered and disposed of in all respects as if he were naturally dead.

62-2002 provided that whenever any person was imprisoned in the penitentiary for a term less than his natural life a trustee could be appointed to take charge of and manage his estate.

62-2006 provided that upon qualification of the trustee so appointed, all estate, property, rights in action and effects of the convict were vested in such trustee in trust for the benefit of creditors and others interested therein.

62-2007 provided that the trustee so appointed could sue to recover, in his name, any of the estate, property or effects belonging to, and all debts and money due or to become due to, such imprisoned convict, and, further, that such trustee could prosecute and *defend all actions* commenced by or *against such convict.*

Under these statutes, and others appearing in Chapter 62, Article 20, of G. S. 1935, all of which have been repealed, and as construed in our earlier decisions, it is clear that civil proceedings could not be had against one imprisoned in the state penitentiary for a term less than life, absent the appointment of a trustee.

However, the only "trustee statute" now in effect is G. S. 1949, 59-301 (9), enacted in 1939, which authorizes a probate court to appoint and remove a trustee of the estate of a convict imprisoned in the penitentiary under sentence of *imprisonment for life.* This statute is of course inapplicable to the facts before us because defendant was sentenced to imprisonment for a term less than life.

In connection with G. S. 1949, 21-118, quoted *supra,* reference is made to G. S. 1949, 21-134, which reads:

"The right and power to make contracts in respect to their property, both real and personal, is hereby conferred on all persons confined in the penitentiary for a period less than life as fully and completely as if their civil rights were not suspended."

In *Everly v. Byrd,* 159 Kan. 187, 191, 152 P. 2d 831, it was said that when construed together, the two last-mentioned statutes simply mean that even though the civil rights of the individual referred to in both sections are suspended, his contracts with respect to his property when made by him are nevertheless recognized as valid and enforceable.

The question whether one sentenced to confinement in the penitentiary for a term less than life may be proceeded against in a civil action while so confined was touched on in *First National Bank v.*

*Bryant,* 170 Kan. 658, 228 P. 2d 534, but a determination thereof being unnecessary for a decision, was not decided.

In dealing with the problem presented it is to be understood that we are not concerned with questions pertaining to rights or disabilities of convicts sentenced for life, or with the disability statute (G. S. 1949, 60-307), which of course is personal to the one under the alleged disability and may be invoked only by him (*Bradley v. Hall,* 165 Kan. 358, 365, 194 P. 2d 943), or with the right of one imprisoned for a term less than life to bring a civil action (34 Am. Jur., Limitation of Actions, § 214, p. 171; 54 C. J. S., Limitations of Actions, § 241, p. 268, and Annotation at 24 A. L. R. 2d 618) while so confined.

We are concerned solely with the question whether one imprisoned in the state penitentiary for a term less than life may be sued while so confined.

It is to be noted that even under our early decisions one so confined could be sued provided a trustee was appointed for him under the statutes, *supra,* then in force, and that even under those statutes one so imprisoned could be served with process in a divorce action brought on the ground of defendant's conviction of a felony and imprisonment therefor subsequent to the marriage, such right of a plaintiff being recognized as an exception to the rule. (*County of Rice v. Lawrence,* 29 Kan. 158, 162, *supra.*) But, by the repeal of our "trustee statutes" in 1939, and the enactment of G. S. 1949, 59-301 (9), *supra,* providing for the appointment of a trustee only for one imprisoned for life, it seems clear that the legislature had in mind the abolition of all restrictions with reference to those sentenced for a term less than life.

In our opinion there are very logical reasons for holding that one so confined may be sued. In the first place, surely it cannot be the law that a person, by the commission of a felony and conviction and sentence thereunder, is thus able to work out for himself a more favorable situation with respect to his creditors than if he had not committed the offense. In the second place, to hold that one so confined may not be sued, would, in many instances, result in impairment of contracts merely by the artifice of committing a felony and being punished therefor. In other words, one should not be permitted to take advantage of his own wrong so as to thwart rights of his creditors. (See *Grasser v. Jones et al.,* 102 Or. 214, 201 Pac. 1069.) We know of no statute, or decision of this court under stat-

utes now in force, to the effect that one confined in the state penitentiary for a term less than life may not be proceeded against in a civil action.

Applying what has been said to the record before us, it is clear that irrespective whether plaintiff's causes of action are deemed to have accrued on February 9, 1951, or on April 23, 1951, they are barred by the two-year statute of limitation, and it follows that the demurrer to the petition was improperly overruled.

The judgment of the trial court is therefore reversed with directions to sustain the demurrer.

HARVEY, C. J., and ROBB, J., not participating.